**SOUTHERN SURETY CO. et al. v. TABER et al.**

No. 12221—Opinion Filed Jan. 11, 1923.

(Syllabus.)

1. **Master and Servant — Workmen's Compensation—Statute.**

Section 1, art. 2, ch. 246, Session Laws 1915, as amended by section 2 of chapter 14, Session Laws of 1919, provides for the payment to employes by every employer subject

to the provisions of the act according to the schedule for the disability resulting .from accidental personal injury sustained by the employe arising out of and in the course of his employment, without regard to fault as a cause of such injury, except where the injury is occasioned by the willful intention of the injured employe to bring about injury of himself or of another, or resulting directly from the intoxication of the injured employe while on duty.

**2. Same — Presumption that Injury is Compensable.**

In any proceeding for the enforcement of a claim for compensation under the Workmen's Compensation Law of this state it will be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provision of the act.

**3. Same — Finding of Fact — Conclusiveness on Appeal.**

In a proceeding commenced in this court to review an award of the State Industrial Commission, such is a proceeding to review errors of law, and not of fact. The findings of fact made by the Industrial Commission are conclusive upon this court, and will not be reviewed by this court.

**4. Same — Affirmance of Award.**

Record examined, and held, that the award of the Industrial Commission should be sustained. And it is so ordered.

From the State Industrial Commission.

Action by the Southern Surety Company and the Black Hawk Lead & Zinc Company to review award of Workmen's Compensation to J. Taber. Affirmed.

Stanard & Ennis, for petitioners.

George F. Short, Atty. Gen., and Kathryn Van Leuven, Asst. Atty. Gen., for respondents.

JOHNSON, J. The petitioners commenced this action in this court to review an award of the State Industrial Commission, which is as follows:

"Now on this the 31st day of March, 1921, this cause coming on for consideration upon the testimony taken at a hearing held at Miami, Okla., March 23, 1921, to determine liability and extent of disability, the claimant being represented by Jesse Harp, his attorney, and the respondent and insurance carrier being represented by A. J. Follens, and the commission after examining the testimony taken at said hearing and being otherwise well and sufficiently advised in the premises, finds that the claimant was injured November 26, 1920, and as a result of said injury was disabled until December 31, 1920, and is entitled to compensation computed from November 26, 1920, to December 31, 1920, at the rate of $13.70 per week; or

for a period of five weeks, amounting to $68.50.

"It Is Therefore Ordered: That within ten days from the date hereof, the respondent or insurance carried pay to the claimant compensation computed from November 26, 1920, to December 31, 1920, at the rate of $13.70 per week, being for a period of five weeks, and continue said payment until the sum of $68.50 is paid; and also pay all medical expenses incurred by claimant as a result of said injury."

The petitioners have made six assignments of error in their petition, concerning which they say in their brief as follows:

"The four assignments of error presented in the petition for review go to one proposition and can all be presented thereunder: 'That the Industrial Commission erred in concluding as a matter of law that the respondent was entitled to compensation when the record discloses that he sustained no accidental injury and that any physical disability suffered or incurred was due to respondent Taber becoming overheated, and arose from overexercise and work, and not from any injury received. * * *'

"We recognize the rule, uniform in this state, that if there is any evidence in the record to sustain the finding of the State Industrial Commission, this court will not review it as a question of fact; but, on the other hand, if there is no evidence upon which the commission could base its order, then the order is reviewable as a question of law. This is the decision of this court in Associated Employers' Reciprocal et al v. State Industrial Commission et al., 83 Okla. 73, 290 Pac. 862, in the syllabus, as follows: 'By the provisions of section 10 of the Workmen's Compensation Law (chapter 14, Session Laws 1919) the decision of the State Industrial Commission is made final as to all questions of fact; but this is so only when there is some evidence to support such decision, and, where there is absolutely no evidence to support such finding and decision, the same may be reviewed as a matter of law.'

"There is no evidence in this record, direct or by reasonable inference, that Mr. Taber's illness was due to gas. If it was not, then it was simply an illness to which any of us may be subject. The Workmen's Compensation Act does not attempt to make the employer liable for the illness of his employes, nor does it make the employer the insurer of the health of the employe. This court is not justified in extending the operation of the law beyond the limit contemplated by the Legislature as expressed in the act itself.

"We insist that, upon this record, the testimony of the claimant and his physician, there is no evidence to sustain the order of the commission. We, therefore ask and

insist that the cause be reversed and the Industrial Commission directed to dismiss the complaint."

The foregoing excerpt from the brief of counsel states their contention fully, the propositions relied on for reversal and the applicable authorities in support thereof.

The record discloses that the claimant was an experienced coal miner, having worked in coal mines for about 15 years; and was shoveling coal in the mine at the time the injury complained of occurred, which was about eleven o'clock a. m. on the 25th of November, 1920; that he had been working very hard shoveling coal into the cans on the day of the alleged injury; and in his testimony describing his injury in response to a question, he stated:

"A. Was down in the Black-Hawk Lead and Zinc Company mine, and when I went to push out last car before noon, I discovered I could not get back, something wrong, and I fell when I reached up for my coat and shirt, I began to sink down again and the mule skinner and someone of the shovelers spoke to me. They carried me out and called the doctor and took me to the hospital, and I judge it was four hours before I could speak. Then I come home, and I am not able to work yet; my heart bothers me and my head and stomach. Dr. Phillips waited on me, and he said I was gassed."

He testified on cross-examination by Mr. Follens as follows:

"Q. You worked all morning? A. No. Q. This accident was about noon? A. Yes. Q. And you had worked all morning and had not suffered any disability? A. No, sir. Q. You worked there in the same place? A. Yes. Q. Just at noon, when you quit, you suddenly collapsed? A. I was supposed not to work any later. Q. You had not had any injury or any accident? A. Just like I told you. Just like I said. Q. Had you had any trouble like that before? A. No, sir. Worked in the mines 15 years. By the Court: Q. Did you lose any time from work prior to the accident? A. No, ma'am. Q. Was there anyone working with you at the time of this injury? A. No one right with me. Q. Did you notice any fumes? A. No, it just seemed close. No, never that I thought anything."

The general manager of the mine, G. N. Williams, testified as follows:

"By the Court: Q. Where do you live? A. Miami. Q. You are connected with the Black-Hawk Lead and Zinc Co.? A. General manager. Q. Do you know anything of this injury? A. I was sitting in the office and saw a man being carried by two or three of the men, and I thought they were just playing, and in a few minutes the man let loose of the shoveler. I thought he was

paralyzed; he did not look like a man who was gassed to me. They put him in a car and took him over to the hospital. By Mr. Follens: Q. You made an investigation as to the foul air? A. I asked at the office how the air was, and he said— Q. If there had been foul air in the mine about the place where Mr. Taber was working, could it have been possible for him to have worked two and a half or three hours and not be overcome? A. Sometimes one could work and not feel any of this poor and smoky air, but they will later. Q. This is not poor and smoky? A. There are two different kinds. We have been having good air there, and during that hot weather we had bad air, and several men were sick for two or three days. Q. Any one else overcome? A. No. By the Court: Q. Were you down in the mine at the time of this alleged injury? A. No. Q. Then you really do not know? A. No. Q. It is your duty to make investigation? A. Yes. My ground foreman had been down that day, and he said the air was all right."

The claimant's verified claim contained the following deposition:

"Q. How long have you worked at this occupation? A. Miner for 16 years; 1st day to shovel at this mine. I have worked there for about 8 months. Q. Were you doing your regular work when injured? A. Yes. Q. Describe how accident occurred. A. I was putting dirt into a can and was overcome by gas that had accumulated in the mine, and by reason thereof I am unable to perform any services."

Dr. E. J. Dodson testified in part as follows:

"Q. What do you know about this disability? What was the nature of the disability? A. Well, from the best of my judgment his symptoms presented when he was brought in, he was suffering from overexertion, overheat, and there might have been some gas with it. He also showed signs of indigestion. He was overheat, and there was some signs of gas with it. But it seemed as though he had acute indigestion more than anything else. The conditions did not indicate gas trouble so much. We thought at the time that he had gotten some bad air in there, but later it did not turn out that way. Q. All of the signs and indications at the time he was examined by you were that it was some, or was more of a case of overexertion, or what you might call a paralytic stroke? A. I do not think there were any paralytic condition there. Q. You do not think it was from gas, then? A. It was more of a case of acute indigestion, or overexertion I think."

Bert Davis, the shoveler boss, testified in part as follows:

"Q. Were you there at the time that he was injured? A. No. Q. How long had it

been before that that you were there? A. It was about eleven o'clock, I guess. A. And it happened about 50 minutes after this? A. Yes, I came down from there and I had told him to take his time. Q. Did you know that there was gas in that well last summer? A. Yes, there was some in there. Q. Was there any there in November? A. I do not think so. I will not say. There might have been. Q. Well, the gas that was in there at any time, is that the natural gas, or gas by reason of explosion? A. Well, it is caused by shooting powder in there and letting it stay in all night. Q. Had you been using the usual amount of explosives? A. Yes. Q. Now, is not that mine connected with the Premier mine? A. Yes. Q. And this gas came from the Premier mine? A. Yes, in the summer time. Q. Was any coming in during November? A. I do not think so. Q. You do not know? A. No, sir. Q. Do you know of your own personal knowledge whether or not Mr. Taber was asphyxiated by gas? A. Well, I was there. Q. You do not know? A. No."

C. Wright testifies as follows:

"Q. State your name to the court. A. C. Wright. Q. Are you a miner? A. Yes, sir. Q. How long have you been mining? A. Fourteen years. Q. Did you work at the Black Hawk Mine in November? A. Yes, sir. Q. You say you worked there during November? A. No, sir. Q. Did you work there any time? A. Yes. Q. When? A. Last spring, one week. I do not remember exactly when it was, but it was before Christmas. Q. This last Christmas? A. Yes. Q. Do you know if there was any gas in that mine or not? (Question objected to by A. J. Follens. Witness told to answer question by Court.) A. Yes, there was gas in it. Q. What part of the mine did you work in? A. In the west part. Q. Do you know from where the gas came from that was in there? A. Well, I used to work there before the Premier cut through. Q. When did the Premier cut through? A. I think it was in April or June. Q. Did that same condition exist in April and June when you came back to work before Christmas? A. It was not as bad. Q. But there was gas there? A. Yes, sir. By the Court: Q. Were you working there at the time the claimant was employed? A. Yes. Q. How long after? A. Well, I do not know exactly how long; about one week. Q. You say there was gas in the mine? A. Yes, sir; there was."

The right of an employe to compensation is limited by section 1 of article 2 of chapter 246, Session Laws of 1915, as amended by section 4 of chapter 14 of the Session Laws of 1919, which reads in part, as follows:

"Every employer subject to the provisions of this act shall pay, or provide as required by this act, compensation according to the schedules of this article for the disability of his employe resulting from an accidental personal injury sustained by the employe arising out of and in the course of his employment. * * *"

It is clear that a disabilty must result from an accidental personal injury arising out of and in the course of employment. Section 7 of article 1 of chapter 246, Session Laws of 1915, defines the meaning of the words "injury" or "personal injury," as used in said act, as follows:

"Injury, or personal injury, means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom."

Section 1, article 2, chapter 246, Session Laws 1915, as amended by section 2 of chapter 14, Session Laws of 1919, provides for the payment to employes by every employer subject to the provisions of the act according to the schedule for the disability resulting from accidental personal injury sustained by the employe arising out of and in the course of his employment, without regard to fault as a cause of such injury, except where the injury is occasioned by the wilful intention of the injured employe to bring about injury of himself or of another, or resulting directly from the intoxication of the injured employe while on duty.

Section 11 of the same act provides that:

"In any proceeding for the enforcement of a claim for compensation under this act it shall be presumed in the absence of substantial evidence to the contrary: (1) That the claim comes within the provisions of this act."

The testimony discloses that the claimant was 48 years of age, had worked in mines for 16 years and in this mine for eight months, and while engaged in work in this mine became suddenly gassed or overheated, or from either or both suddenly fell and became unconscious and was carried out of the mine by others, and remained in an unconscious condition for about four hours, and was thereafter unable to work for four or five weeks. And the commission so found. And there was no testimony in the record tending to show that such injury was occasioned by the wilful intention of such employe to bring about injury of himself or of another, or resulted directly from the intoxication of such employe while on duty. And in view of this record and the presumption that prevails in the absence of substantial evidence to contrary, it cannot be said that such injury was not accidental

and was of such a nature as to take it without the provisions of the Workmen's Compensation Law of this state.

While the evidence was somewhat in conflict, yet it presented a question of fact for the determination of the commission, and the case comes clearly within the rule that the commission's finding of fact is conclusive upon this court.

And the award of the commission must, therefore, be affirmed  And it. is so ordered.

KENNAMER, NICHOLSON, COCHRAN, and BRANSON, JJ., concur.