**SPURRIER LUMBER CO. v. COOK et al.**

No. 23254. Opinion Filed July 27, 1932.

Rehearing Withdrawn Sept. 29, 1932.

Lashley & Rambo and Russell B. James, for petitioner.

J. Berry King, Atty. Gen., Robert D. Crowe, Asst. Atty. Gen., C. B. Stuart. E. J. Doerner, and B. A. Hamilton. for respondents.

SWINDALL, J. This is an original proceeding to review an award of the State Industrial Commission. The findings of fact contained in the award of the Commission are as follows:

"(1) That on the 20th day of June, 1930, the claimant was in the employment of said respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date he sustained an accidental injury by falling eight feet from an ice box.

"(2) That the average daily wage of the claimant at the time of the said injury was $5.

"(3) That the claimant drew his regular wages from the date of said accidental injury to September 5, 1931.

"(4) That by reason of said accidental injury the claimant's wage-earning capacity has decreased, by reason of a change in his condition, from September 5, 1931, in the same employment or otherwise, from $5 to $1, by reason of his permanent partial disability.

"(5) That by reason of claimant's permanent partial disability, as aforesaid, claimant is entitled to 66⅔ per centum of the difference between his average daily wage at the time of the accidental injury and his wage-earning capacity thereafter of $15.39 per week payable during the continuance of such permanent partial disability, not to exceed 300 weeks."

It is admitted that the petitioner, Spurrier Lumber Company, at the time of the alleged accidental injury and for a number of years prior thereto, was operating a lumber yard in the city of Tulsa, Okla. Its business was divided into a number of different and distinct departments, such as the lumber department, the hardware department, paint department, accounting department, radio department, and other depart-

ments. About the 1st of January, 1930, the petitioner employed respondent F. C. Cook in its radio department. During the month of March, 1930, petitioner took over the sale of what is known as the Servel Iceless Refrigerator, and accordingly put in a separate department for that purpose. The respondent F. C. Cook was sent to the Servel school in Evansville, Ind., for a couple of weeks to learn the business of installing and servicing said refrigerators. At the expiration of his training he returned to Tulsa and thenceforth his services with the respondent continued in the exclusive capacity of servicing and installing Servel Iceless Refrigerators. On the 20th of June, 1930, while engaged in the servicing and installing of a Servel Iceless Refrigerator unit in what is known as a "walk-in" ice box located in the Oswald Grocery in the city of Tulsa, he fell and was injured. He was under the care of a physician for approximately ten days, after which he returned to work and continued in the performance of his usual duties until about May 1, 1931, when he complained of having difficulty with his back and legs and discontinued his active duties with the petitioner.

The petitioner contends, first, the Industrial Commission had no jurisdiction to hear and determine this matter, because (a) the employer (respondent) employed less than two workmen within the contemplation of the Workmen's Compensation Act, and (b) because the employment of the claimant was not included within the term "hazardous employment" as set forth in said act. Second, even though the State Industrial Commission had or acquired jurisdiction, the evidence offered at the hearing was and is insufficient to authorize the granting of any relief to the claimant.

The respondent Cook testified that:

"A. The compressor was taken to the job by four men; there might have been six, I don't remember. It took four I know to put it upstairs. Then Mr. Mitchell, of Claremore, and I do not recall the man's name—just a minute—George Crawford's son, under my supervision, installed that machine. Holes had to be bored in the box, new tubing run to the machine; pipe had to be cut for the water to the machine, and from the machine to the sink, and the electricity was hooked up. I did that."

Respondent further testified that:

"A. You had to do plumbing work, electric work, carpenter work, and anything else—it took them all in, as you had to build a baffle for the coil to lay on; you had to get lumber and have it cut in lengths, put it in the box and nail it together. You had to measure pipe, go to the store

and get your pipe out of the hardware department; get your fittings out of the hardware department; cut your pipe there at my bench the lengths you wanted, and took them out and put them together. For electric wire you went to the hardware department. If they did not have wire in stock you wanted, they gave you an order, you went to an electrc supply house or Dodge Electric and got wire, tape, and did the job. On this particular job, there was no electrician called in on the job; I did the wiring myself, hooked the machine up."

Section 7284, paragraph 1, Comp. St. 1921, as amended by Laws 1923, c. 61, sec. 2, provides that:

" 'Hazardous employment' shall mean manual or mechanical work, or labor, connected with or incident to one of the industries, plants, factories, lines, occupations or trades mentioned in section 7283, except employees engaged as clerical workers exclusively, and shall not include any one engaged in agriculture, horticulture, or dairy or stock raising, or in operating any railroad engaged in interstate commerce."

Lumberyards are one of the industries defined in the Workmen's Compensation Law as coming under the terms and provisions thereof, and as was said by this court in Southern Surety Company v. Taber, 88 Okla. 103, 212 P. 128, in any proceeding for the enforcement of a claim for compensation under the Workmen's Compensation Law of this state, it will be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of the act. The State Industrial Commission is a fact finding body and its findings of fact will not be disturbed on a petition to review if there is any competent evidence to sustain the same.

We have carefully examined the record, and find that there is competent evidence to sustain the findings of the State Industrial Commission that the respondent F. C. Cook was engaged in a business enterprise included in the Workmen's Compensation Law, and that his employment was a hazardous employment as defined in said act, and that there is competent evidence to show that the injury sustained by him arose out of and in the course of such employment.

The award is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, and KORNEGAY, JJ., concur. RILEY, ANDREWS, and McNEILL, JJ., absent.

Note.—See under (2) annotation in L. R. A. 1916A, 266; L. R. A. 1917D, 186; 28 R. C. L. 812, 828, 829; R. C. L. Perm. Supp. p. 6254; R. C. L. Pocket Part, title Workmen's Compensation, § 116.