The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **October 30, 2023**

**No. A-1-CA-40106**

**NEW MEXICO EDUCATIONAL RETIREMENT BOARD,**

Plaintiff-Appellee,

v.

**DEBBIE ROMERO, in her official capacity as Acting Secretary of the New Mexico Department of Finance and Administration; and NEW MEXICO DEPARTMENT OF FINANCE AND ADMINISTRATION,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Francis J. Mathew, District Court Judge**

Peifer, Hanson, Mullins & Baker, P.A.
Mark T. Baker
Rebekah A. Gallegos
Albuquerque, NM

for Appellee

Hinkle Shanor, LLP
Jaclyn M. McLean
Chelsea R. Green
Santa Fe, NM

for Appellants

**OPINION**

**YOHALEM, Judge.**

{1}     We are asked to determine whether the New Mexico Department of Finance and Administration (DFA) has the authority to reject pay raises for employees of the New Mexico Educational Retirement Board (the Board), which have been approved by the Board and are paid from the educational retirement fund. The educational retirement system is governed by the New Mexico Constitution, Article XX, Section 22, and the Educational Retirement Act (the Act), NMSA 1978, §§ 22-11-1 to -55 (1967, as amended through 2023). It was the practice of DFA between 2016 and 2020, before the declaratory judgment was entered in this case, to require Board-approved salary increases to comply with the governor's exempt salaries plan, a plan prepared annually under Section 10-9-5 of the Personnel Act, NMSA 1978, §§ 10-9-1 to -25 (1961, as amended through 2014). Raises exceeding the percentage of increase in salary adopted by the governor's exempt salaries plan or found by DFA to be insufficiently justified under the plan's performance measures were either rejected by DFA or submitted to the governor for approval. We agree with the district court that the Board "has the sole and exclusive authority to set salaries and make personnel decisions related to its administration of its funds under its constitutional and statutory authority and [DFA] does not have the authority to either reject

approved salary increases or seek the governor's approval before implementing such approved salary increases." We, therefore, affirm.

**DISCUSSION**

{2}      DFA contends on appeal that the Act's designation of the state treasurer as the "custodian" of educational retirement system funds, *see* § 22-11-11(A), (B), and the Act's provision for disbursement of funds on warrants issued by DFA, *see* § 22-11-12, authorize DFA to impose the same financial controls on the Board that DFA exercises over state executive branch agencies. According to DFA, the provisions of Article XX, Section 22(B) of the New Mexico Constitution, providing that the Board has the "sole and exclusive" fiduciary authority to administer the educational retirement system, and the provisions of Section 22-11-10(A), authorizing the Board to set the amount of its employees' salaries by regulation, convey only limited authority, tempered by the statutory designation of the state treasurer as the "custodian" of the system's funds and by DFA's authority to issue warrants to authorize the disbursement of funds.

{3}      The Board, in response, contests both DFA's construction of Article XX, Section 22 of the New Mexico Constitution, and of the Act's provisions creating and implementing the educational retirement system. The Board focuses on the plain meaning of the constitutional and statutory provisions, which together govern the educational retirement system. These provisions give the Board the sole and

exclusive responsibility to administer the fund in the interests of the retirement system's beneficiaries. The Act further specifies that the amount of salaries and fees to be paid by the Board—the very type of payments at issue here—"shall be fixed by the regulations of the [B]oard." Section 22-11-10(A). Reading these constitutional and statutory provisions together, the Board argues that it has no obligation to answer to DFA, or to submit for the approval of the governor, the amount it sets for its employees' salaries. According to the Board, the educational retirement system is designed to operate separately from executive branch agencies. DFA's authority to reject salary increases, according to the Board, is not supported by the language of Article XX, Section 22 of the New Mexico Constitution, by the language of the Act, or by the purposes sought to be achieved by the framers and the Legislature. We agree with the Board and explain our reasoning.

**I.      Applicable Principles of Statutory Construction**

{4}      The question presented for our review—whether DFA has the authority to either reject salary increases for Board employees adopted by the Board and authorized by the Board for payment out of the educational retirement fund, or to require the governor's approval for these raises—is a question of both constitutional and statutory construction. Our review, therefore, is de novo. *See State v. Boyse*, 2013-NMSC-024, ¶ 8, 303 P.3d 830 ("We review questions of statutory and

3

constitutional interpretation de novo." (alteration, internal quotation marks, and citation omitted)).

{5} We note that the rules of statutory construction "apply equally to constitutional construction." *State ex rel. Richardson v. Fifth Jud. Dist. Nominating Comm'n*, 2007-NMSC-023, ¶ 17, 141 N.M. 657, 160 P.3d 566. Well-established rules of statutory construction guide our review. "The principal command of statutory construction is that the court should determine and effectuate the intent of the Legislature, using the plain language of the statute as the primary indicator of legislative intent." *State v. Gutierrez*, 2023-NMSC-002, ¶ 22, 523 P.3d 560 (alteration, internal quotation marks, and citation omitted). When we construe the Constitution, we similarly look to the provision's plain language, exercising care to use that language as the primary indicator of the framers' intent and of the purposes they sought to achieve. *See State v. Ball*, 1986-NMSC-030, ¶ 16, 104 N.M. 176, 718 P.2d 686 ("[I]t is our duty to give effect to the spirit and intent of the Constitution's framers."). Where, as is the case here, both constitutional and statutory provisions address the same subject, we will read the two together, giving effect to both, "unless [legislative intent] clearly appears to be in conflict with the Constitution." *State ex rel. Off. of State Eng'r v. Lewis*, 2007-NMCA-008, ¶ 37, 141 N.M. 1, 150 P.3d 375 (internal quotation marks and citation omitted).

## II. The Provisions Creating the Board and the Fund and Defining Board Authority

{6} Because the educational retirement system was created by statute before the New Mexico Constitution was amended to add Article XX, Section 22, we begin our analysis by looking first to the words chosen by our Legislature. *See State v. Farish*, 2021-NMSC-030, ¶ 11, 499 P.3d 622 ("We first look to the plain meaning of the statutory language."). The educational retirement system was created by the Legislature in 1967. *See Pierce v. State*, 1996-NMSC-001, ¶ 34, 121 N.M. 212, 910 P.2d 288. It was not until thirty years later, in 1998, that the voters approved the constitutional amendment, codified as Article XX, Section 22 of the New Mexico Constitution, clarifying both the authority of the Board and the nature of the educational retirement fund.

{7} The Act provides retirement benefits to a wide range of members, regular members, and participants; terms that are defined broadly to include persons employed by a state educational institution, a junior or community college, a technical or vocational institute, a state institution with an educational program, by the department of education, or by programs licensed by the department of education. *See* § 22-11-2(A), (B), (W). Section 22-11-11(A) created the educational retirement fund to pay retirement benefits to the members, and provided that expenditures by the Board for the administration of the system, as well as for the payment of benefits, would be made from this fund. Section 22-11-3(A), (B) creates

a nine-member Board composed of five individuals selected by state officials and four individuals who are members of the retirement system, elected by their peers.

{8} The Board is designated as the trustee of the system's funds. *See* § 22-11-11(B) (providing the Board "shall be the trustee of the funds"). In the same section, the state treasurer is designated as "the custodian of the funds" and, in the next section, § 22-11-12, the state treasurer is directed to make disbursements "only on warrants issued by [DFA] or through any other process as approved by [DFA]." DFA, in turn, is authorized to issue warrants for disbursements from the fund, "only upon voucher of the [educational retirement[1]] director." Section 22-11-12. Finally, the Act specifically authorizes the Board to hire employees, to delegate administrative authority to those employees, and to set their salaries. *See* § 22-11-10.

{9} Thirty years after the Act was adopted, Article XX, Section 22 of the New Mexico Constitution expanded upon and clarified the provisions of the Act creating the fund and the Board. Article XX, Section 22(A) provides that all funds held by the educational retirement system "shall be held . . . in a trust fund to be administered and invested by [the educational retirement] system for the sole and exclusive benefit of the members, retirees and other beneficiaries of that system." Article XX, Section

---

[1]*See* § 22-11-2(Q) (defining "director" to mean "the educational retirement director").

22(A) further provides that "[e]xpenditures from [the fund] shall only be made for the benefit of the trust beneficiaries and for expenses of administering the system." Finally, this provision restates the statutory directive that the Board "shall be the trustees for [the educational retirement system], and further explains that the Board shall "have the sole and exclusive fiduciary duty and responsibility for administration and investment of the trust fund." N.M. Const. art. XX, § 22(B). Article XX, Section 22(D) creates a "vested property right," protected by due process, in the trust fund once an eligible member meets the minimum service requirements of their retirement plan. Finally, Article XX, Section 22(A) authorizes the Legislature to provide for the investment of funds and the administration of the system, stating that "[t]o the extent consistent with the provisions of this section, each trust fund shall be invested and the systems administered as provided by law."

**III. The District Court Did Not Err in Granting Declaratory Judgment in Favor of the Board**

{10} DFA's argument focuses on the language of Section 22-11-12, the section addressing the method of making disbursements from the fund. That provision states:

> The state treasurer shall make disbursements from the education retirement fund . . . only on warrants issued by [DFA] or through any other process as approved by [DFA]. Warrants for disbursements from the educational retirement fund . . . shall be issued by [DFA] only upon voucher of the [educational retirement] director."

7

The state treasurer is made the "custodian of the funds" by the preceding statutory section, § 22-11-11(B).

{11}     Although acknowledging that the Act makes the Board the "trustee" of the fund, that the Constitution gives the Board "the sole and exclusive fiduciary duty and responsibility for administration and investment of the trust fund," N.M. Const. art. XX, § 22(B), and that the Act explicitly provides that "[t]he amount of salaries and fees to be paid by the [B]oard shall be fixed by the regulations of the [B]oard," § 22-11-10(A), and "shall be paid out of the fund," § 22-11-10(B), DFA contends that these provisions do not give the Board the "*sole* authority on *all* matters," and argues that construing these provisions to give the Board authority over salary increases for its employees would render the language of Section 22-11-12, authorizing DFA to issue warrants for the disbursement of funds, superfluous.

{12}     We do not agree that the language of the Act and of Article XX, Section 22 of the New Mexico Constitution, making the Board the trustee of the fund with "sole and exclusive fiduciary duty and responsibility for administration and investment of the trust fund," was intended to include only limited authority to make administrative decisions. Nor do we agree with DFA that Section 22-11-12 is rendered superfluous by a construction of the Act that recognizes the Board's broad authority to set salaries and otherwise make all administrative decisions for the educational retirement system.

8

## A.      The Board's Fiduciary Authority as Trustee of the Fund

{13}      We first note that both the Act, § 22-11-11(B), and Article XX, Section 22(B) of the New Mexico Constitution, make the Board the "trustee" of the funds. To the extent there is any confusion or ambiguity about the Legislature's intent in making the Board the "trustee of the funds" in Section 22-11-11(B), that ambiguity is clarified by Article XX, Section 22(B) of the Constitution. Article XX, Section 22(B) not only restates and confirms the Legislature's designation of the Board as the trustee for what the Constitution now designates as the educational retirement *trust* fund; it assigns to the Board, as trustee, "the sole and exclusive fiduciary duty and responsibility for administration and investment of the trust fund held by [the educational retirement system]." A "fiduciary duty" is defined by our precedent as a duty of loyalty; "[a] fiduciary is obliged to act primarily for another's benefit in matters connected with such undertaking." *Kueffer v. Kueffer*, 1990-NMSC-045, ¶ 12, 110 N.M. 10, 791 P.2d 461 (internal quotation marks and citation omitted). Consistent with this definition of fiduciary duty, Article XX, Section 22(A) of the Constitution provides that the Board is charged with the fiduciary duty to administer the trust fund "for the sole and exclusive benefit of the members, retirees and other beneficiaries of that system." The Board may authorize "[e]xpenditures . . . only . . . for the benefit of the trust beneficiaries and for expenses of administering the system." *Id.*

{14} The Legislature, perhaps anticipating some confusion about DFA's and the Personnel Board's role in setting the salaries of Board employees, singled out expenditures for salaries and consulting fees, specifically providing that "[s]alaries and fees paid . . . shall be paid out of the fund," § 22-11-10(B), and further providing that "[t]he amount of salaries and fees to be paid by the [B]oard shall be fixed by the regulations of the [B]oard," § 22-11-10(A). This language plainly provides that salaries are to be treated the same as other expenditures controlled by the Board. Like other expenditures, the Board is authorized, and indeed required, to set their amount based on its determination of what best serves the interests of the beneficiaries of the fund. The amount set for salaries and fees is critical to the Board's ability to hire and retain highly qualified financial managers. Subjecting the Board to the fiscal restraints on the state budget, set by the governor and enforced by DFA, would, as the district court noted, authorize DFA and the governor to set the educational retirement system's salaries based on the interests of their broad constituency, in direct contradiction to the clearly expressed intent of the framers and the Legislature that these rates be set "for the sole and exclusive benefit of the members, retirees and other beneficiaries of [the retirement] system." N.M. Const. art. XX, § 22(A).

{15} Although this Court has not previously addressed this question, the New Hampshire Supreme Court has considered whether the governor of that state has

authority similar to that claimed by DFA for itself and for our governor. Like the Board of our retirement system, the New Hampshire retirement board has a fiduciary duty to administer the system for the sole benefit of its members. The New Hampshire Supreme Court held that review by the governor would interfere with the exercise by the board of its fiduciary duty to trust beneficiaries. *See N.H. Ret. Sys. v. Sununu*, 489 A.2d 615, 619 (N.H. 1985).

**B.    The State Treasurer's Role, as Custodian of the Fund, Is Not Superfluous**

{16}    We do not agree with DFA that Sections 22-11-11(B) and -12, making the state treasurer the custodian of the funds and requiring distribution of funds upon warrant by DFA, override the Board's constitutional and statutory authority to set the amount of its employees' salaries. These sections direct the state treasurer, with DFA's assistance, to serve as the "custodian" of the funds. The term "custodian" is not defined by the Act. As the starting point for interpreting undefined terms contained in a statute, "our courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory construction inquiries." *State v. Lindsey*, 2017-NMCA-048, ¶ 14, 396 P.3d 199 (alteration, internal quotation marks, and citation omitted). *Webster's Third New International Dictionary*, defines the term "custodian" as "one that guards and protects or maintains," and, when used in relation to as to property, "one entrusted officially with guarding and keeping (as

property, artifacts, or records)." *Custodian*, *Webster's Third New Int'l Dictionary* (Unabridged ed. 2002).

{17} The statutory authority given to the state treasurer to disburse funds on warrants issued by DFA when an expenditure is authorized by voucher of the Board is consistent with the limited role of a custodian in safeguarding funds and ensuring that they are not fraudulently disbursed by someone without authority to do so. This ministerial role of protecting the funds and safely processing payments to the Board's staff and other expenditures authorized by the Board stands in contrast to the role assigned to the Board, as trustee of the fund, with the sole authority to invest, administer, and authorize expenditures from the fund. A fund can have both a trustee and a custodian without either provision being superfluous; the roles are quite distinct.

**C.     DFA's Reliance on the Statutory Provisions Giving DFA Authority to Supervise Accounting Methods for State Agencies, and on Section 10-9-5 of the Personnel Act, Which Concerns Raises for Executive Branch Employees, Is Misplaced**

{18} To the extent DFA relies on NMSA 1978, Sections 6-5-1 to -6 (1957, as amended through 2003), a provision that gives DFA the authority to supervise the general accounting methods and procedures of state agencies and to work with the state treasurer to issue warrants for distribution of budgeted funds, to argue that it has the authority to reject Board-authorized salary increases, we agree with the district court that "[s]uch general accounting methods and procedures are for the

purpose of safeguarding funds from erroneous or unauthorized disbursements, not granting approval authority."

{19} Looking in particular to Section 10-9-5 of the Personnel Act, we note that the district court concluded that this statute applies only to the employees of executive branch agencies, and not to the Board. DFA has not presented any argument or authority to the contrary on appeal. We, therefore, apply our presumption of correctness to the decision of the district court. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (explaining that "[t]here is a presumption of correctness in the district court's rulings," and it is the burden of the appellant to show that the district court has erred (alterations, internal quotation marks, and citation omitted)).

{20} In any event, as to both the financial control provisions found in Sections 6-5-1 to -6, and those found in Section 10-9-5 of the Personnel Act, the rule of statutory interpretation providing the more specific statute prevails over a general statute also requires us to reject DFA's arguments. "A statute enacted for the primary purpose of dealing with a particular subject prescribing terms and conditions covering the subject-matter supersedes a general statute which does not refer to that subject although broad enough to cover it." *See Lopez ex rel. Lopez v. Barreras*, 1966-NMSC-209, ¶ 12, 77 N.M. 52, 419 P.2d 251 (internal quotation marks and citation omitted). We agree with the district court that this principle applies here and provides

13

yet another basis for concluding that the terms of Article XX, Section 22 of the Constitution and the terms of the Act, directed as they are specifically to the educational retirement system and to its employees, prevail over any conflicting terms in the general financial statutes cited by DFA.

**CONCLUSION**

{21}     For the foregoing reasons, we affirm.

{22}     **IT IS SO ORDERED.**


_____

**JANE B. YOHALEM, Judge**

**WE CONCUR:**


_____
**J. MILES HANISEE, Judge**


_____
**JACQUELINE R. MEDINA, Judge**

14