**IMBURGIA et al.**

v.

**OHIO DEPARTMENT OF TRANSPORTATION.**

Court of Claims of Ohio.

No. 98–03526.

Decided Aug. 17, 1999.

*Gibson, Brelo, Zicarrelli & Martello, Joseph Gibson* and *Eric W. Tayfel,* for plaintiffs.

*Betty D. Montgomery,* Attorney General, and *Stephanie D. Pestello–Sharf,* Assistant Attorney General, for the state.

### Decision of Liability

J. WARREN BETTIS, Judge.

In their complaint, plaintiffs, Benjamin and Barbara Imburgia, allege that defendant, the Ohio Department of Transportation ("ODOT"), is liable for its negligent maintenance of an in-ground electrical junction box located alongside an interstate highway entrance ramp. Defendant denies liability. A bifurcated trial was held on the sole issue of liability. The findings and conclusions herein are derived from the documents and pleadings in the case file, evidence at trial, and the respective presentations by counsel.

At approximately 8:00 p.m., on December 25, 1997, plaintiff Benjamin Imburgia was driving on the entrance ramp to Interstate Route 480 westbound from Ridge Road, in Brooklyn, Ohio. Plaintiff Barbara Imburgia was a passenger in the vehicle. As they drove onto the ramp, their vehicle developed a flat tire. Benjamin pulled the vehicle to a stop underneath a light post located along the berm of the ramp. Barbara exited the vehicle while Benjamin replaced the tire. Barbara stood at the rear of the vehicle, and, as she moved out of her husband's way, she stepped into an in-ground electrical junction box and sustained severe injuries to her left foot, ankle, and calf.

Electrical junction boxes are cylindrical in shape and are recessed into the ground. They are located in the median, adjacent to roadway lights, and contain underground lighting circuit cable splices. The boxes are normally covered with a concrete lid. The junction box at issue was twenty-four inches in diameter and was located approximately five feet from the edge of the berm. The concrete lid

was broken and had partially fallen into the junction box. The box was cluttered with additional debris and its corrugated metal lining was bent.

Plaintiffs specifically allege that defendant failed to inspect and maintain the lid on the electrical junction box. Defendant acknowledged that it does not routinely inspect the junction boxes but asserts that it is under no duty to maintain those boxes for the safety of motorists.

■ In order for plaintiffs to prevail on their claim of negligence, they must prove by a preponderance of the evidence that defendant owed them a duty, that it breached that duty, and that the breach proximately caused their injuries. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469.

R.C. 5501.11 states: "The functions of the department of transportation with respect to highways shall be * * * [t]o establish state highways * * * and * * * maintain, and repair the state system of highways * * *."

■ Defendant has a statutory duty to maintain Ohio's roadways in a reasonably safe condition. *White v. Ohio Dept. of Transp.* (1990), 56 Ohio St.3d 39, 42, 564 N.E.2d 462, 465; *Knickel v. Ohio Dept. of Transp.* (1976), 49 Ohio App.2d 335, 339, 3 O.O.3d 413, 415, 361 N.E.2d 486, 489. However, defendant is not an insurer of the safety of its highways. *Rhodus v. Ohio Dept. of Transp.* (1990), 67 Ohio App.3d 723, 729–730, 588 N.E.2d 864, 868.

■ Defendant asserts that its duty to maintain the safety of its roadways for the traveling public does not extend to the median area located adjacent to the roadway. While the court generally agrees with this proposition of law, the specific facts of this case warrant a different conclusion. The court finds that defendant was under a duty to maintain the electrical junction box in this case. Given the proximity of the electrical junction box to the edge of the roadway, the court finds that it was reasonably foreseeable that a motorist, whose vehicle was stopped along the roadway, would walk in the median where the box was located.

■ Although the state is not an insurer of the safety of its highways, once it becomes aware of a dangerous condition on the highway, it is required to take the reasonable care that is necessary to ensure that the traveling public is protected from injury. However, plaintiffs bear the burden of proof to demonstrate that defendant was on notice or aware of any dangerous condition.

■ The legal concept of notice is of two distinguishable types, actual and constructive:

"The distinction between actual and constructive notice is in the manner in which notice is obtained or assumed to have been obtained rather than in the

amount of information obtained. Wherever from competent evidence the trier of the facts is entitled to hold as a conclusion of fact and not as a presumption of law that information was personally communicated to or received by a party, the notice is actual. Constructive notice is that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice." *In re Estate of Fahle* (1950), 90 Ohio App. 195, 47 O.O. 231, 105 N.E.2d 429, paragraph two of the syllabus.

■ Defendant admits that it has no policy regarding routine inspection of in-ground electrical junction boxes. However, Joseph Moran, ODOT District Twelve lighting specialist, testified that once defendant becomes aware that a concrete lid is broken, it makes the necessary repairs. Defendant replaced the junction box lid along the Interstate Route 480 ramp following the incident that gives rise to plaintiffs' claim. Although defendant has no routine inspection policy in place, defendant had actual notice that mowers have previously damaged junction boxes in other locations. However, the court finds that defendant did not have actual notice of the broken junction box lid in this case.

■ " 'If a plaintiff cannot show that a defendant had actual knowledge of an existent hazard, evidence as to the length of time the hazard had existed is necessary to support an inference that defendant had constructive notice.' " *Dickerson v. Food World* (Dec. 17, 1998), Franklin App. No. 98AP–287, unreported, 1998 WL 890137, at * 3, quoting *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 32, 65 O.O.2d 129, 130, 303 N.E.2d 81, 84. In order to support such an inference, evidence must be presented which is sufficient to indicate that the hazard has existed for a reasonably sufficient time to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care. *Dickerson,* quoting from *Johnson v. Wagner Provision Co.* (1943), 141 Ohio St. 584, 589, 26 O.O. 161, 163, 49 N.E.2d 925, 928.

Given the condition of the junction box and its concrete lid, and the apparent length of time that debris had accumulated in the box, the court finds that defendant had constructive notice of the dangerous condition of the uncapped box.

The court finds that defendant did not adequately inspect and maintain the electrical junction box. Therefore, defendant was negligent in that it breached its duty of reasonable care to protect plaintiffs from harm. The court further finds that defendant's breach was a proximate cause of plaintiffs' injuries.

■ Although the court finds that defendant was negligent, Ohio's comparative negligence statute, R.C. 2315.19, bars a plaintiff from recovery if his or her actions were a greater cause (more than fifty percent) of his injuries than any acts of defendant. In the case *sub judice,* the court finds that although plaintiffs'

negligence was not a greater causative factor, it was attributable to twenty-five percent of their injuries. The court finds that Barbara Imburgia failed to use reasonable care by stepping backwards without paying attention to the area around her, thus failing to provide for her own safety as she stepped into the median.

The court concludes that plaintiffs have proven by a preponderance of the evidence that defendant breached its duty of reasonable care; however, the contributory negligence attributable to plaintiffs is twenty-five percent. Judgment is rendered for plaintiffs.

### Judgment Entry

Based upon the totality of the evidence and the arguments of the parties, and for the reasons set forth in the decision filed herewith, it is ORDERED that judgment is rendered in favor of plaintiffs. A trial on the issue of damages will be scheduled in the near future. However, any compensatory damages recoverable by plaintiffs shall be reduced by twenty-five percent, the amount of plaintiffs' contributory negligence.

*Judgment accordingly.*

### Decision on Damages

### Decided October 4, 2000.

J. WARREN BETTIS, Judge.

This case was tried to the court on the sole issue of damages. Defendant's liability was established in a previous decision of the court. Therein, the court held that defendant was negligent in allowing the lid of an in-ground electrical junction box to fall into disrepair. The condition caused plaintiff, Barbara Imburgia, to suffer injuries to her left leg when she fell into the junction box.[1] The court also found that plaintiff was contributorily negligent and assessed her fault at twenty-five percent.

At the time of the fall, plaintiff was a sixty-five-year-old mother of two adult children, who enjoyed walking, attending flea markets, gardening, and socializing with her husband Benjamin. At home, plaintiff performed most of the household chores including cooking and cleaning.

The day after the accident, plaintiff presented to Lakewood Hospital, where X-rays of the left knee revealed that she not only had a torn meniscus but also

---

1. Benjamin Imburgia also has a claim for the loss of consortium. However, for the purposes of clarity, Barbara Imburgia will be referred to as plaintiff.

osteoarthritis. Plaintiff claims that prior to that date, she was not aware that she had arthritis.

After two or three weeks, plaintiff saw Dr. Martinez, an orthopedic surgeon. Dr. Martinez took X-rays of plaintiff's left ankle and prescribed some pain medication. The pain in plaintiff's left knee and ankle subsided with medication and plaintiff was able to ambulate with the aid of a cane. However, six weeks later, plaintiff returned to Dr. Martinez for an MRI. At that point, Dr. Martinez suggested that plaintiff undergo a surgical procedure to remove fluid from her knee. Plaintiff received a second opinion from Dr. Essig, who concurred with Dr. Martinez's recommendation. Plaintiff subsequently underwent several procedures to remove fluid from her knee, followed by physical therapy at Lakewood Hospital.

When plaintiff last saw Dr. Essig in November 1998, she was still complaining of pain and swelling in her left knee. Plaintiff later saw a rheumatologist, who subsequently gave plaintiff injections with Synvisc to treat both of her knees.

Plaintiff testified that she continues to suffer from swelling, pain, and weakness in her left knee and that she has had to use a cane for the last two years when she ventures outside her home. Plaintiff is no longer able to perform any household chores and has trouble using the stairs in her four-story residence; she no longer gardens and she has limited her social activity. Plaintiff admitted that she has become depressed and withdrawn due to her physical limitations.

Plaintiff's husband confirmed that plaintiff's mood changed after the accident and that her emotional state has negatively impacted the marriage. Plaintiff, however, has not sought any psychiatric counseling for her emotional difficulties, nor have she and her husband sought marriage counseling. Plaintiff's husband has assumed responsibility for all of the housekeeping, which was previously performed by plaintiff.

Medical experts were called by the parties in support of their contrasting positions as to the extent of plaintiff's left knee injury and her future medical needs. Defendant's expert, Dr. Hauser, opined that plaintiff had suffered a minor sprain/strain of her left knee and minor abrasions as a result of the fall into the junction box. Dr. Hauser believed that plaintiff's torn meniscus was a result of arthritis and degenerative changes rather than trauma. Hauser did agree that plaintiff needs a left knee replacement, but he stated that such a procedure was directly related to plaintiff's arthritis, not the fall into the junction box. According to Hauser, the degenerative changes in plaintiff's knee are due entirely to arthritis.

Plaintiff's expert, Dr. Essig, opined that plaintiff suffered an internal derangement, a torn medial meniscus, a torn lateral meniscus, sciatica, and an aggrava-

tion of her preexisting arthritis as a result of the fall into the junction box. In Essig's opinion, plaintiff needs a left knee replacement at a cost of about $75,000. Essig acknowledged that plaintiff has arthritis and that some of her pain and swelling is related to that condition. Essig opined, however, that plaintiff's current complaints of pain and swelling are not caused by arthritis alone.

■ Based on the medical testimony in this case, the court finds that plaintiff will need a total left knee replacement in the near future. Although the evidence convinces the court that plaintiff's arthritis is the primary cause of her current condition, the court does find that the injury she sustained in the fall contributed to her current condition and that the accident caused additional injury as well as aggravation of her preexisting arthritis. Thus, the court finds that plaintiff's need for a total left knee replacement is partially attributable to the fall. The court will award plaintiff the sum of $25,000 for future medical expenses and future pain and suffering attributable to defendant's negligence. With regard to plaintiff's past pain and suffering and loss of enjoyment of life, the court finds that plaintiff is entitled to an award of $50,000 to compensate her for that loss.

The evidence further reveals that plaintiff incurred approximately $15,000 in uncompensated medical expenses as a result of her fall into the junction box. Plaintiff is therefore awarded the sum of $15,000 for past uncompensated medical expenses.

Finally, the court finds that plaintiff, Benjamin Imburgia, has proved his claim for loss of consortium and awards him the sum of $10,000 for that loss.

In total, the court concludes that plaintiffs have incurred $100,000 in damages arising directly and proximately from defendant's negligence. Reducing that award by twenty-five percent to account for the negligence attributable to plaintiff results in a total award to plaintiffs of $75,000.

### Judgment Entry

Based upon the totality of the evidence and the arguments of the parties, and for the reasons set forth in the decision filed herewith, it is ordered that judgment is rendered in favor of plaintiffs in the amount of $75,025, which includes the filing fee paid by plaintiffs. Court costs are assessed against defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

*Judgment accordingly.*

J. WARREN BETTIS, J., retired, of the Columbiana County Court of Common Pleas, sitting by assignment.