IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 4, 2014

Docket No. 31,883

MONICA LUJAN, as Personal
Representative of the Estate of
PEGGY LUJAN-SILVA, Decedent,

      Plaintiff-Appellant,

v.

NEW MEXICO DEPARTMENT
OF TRANSPORTATION,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Barbara J. Vigil, District Judge

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellant

Basham & Basham, P.C.
Katherine A. Basham
Santa Fe, NM

Peter J. Gould
Santa Fe, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

**{1}**     Monica Lujan (Plaintiff), as personal representative of Peggy Lujan-Silva

1

(Decedent), sued the New Mexico Department of Transportation (the Department) for wrongful death arising from a single-car accident, alleging that the Department's negligent failure to keep the roadway clear of dangerous debris caused the accident. The district court granted the Department's motion for summary judgment. We reverse.

## BACKGROUND

**{2}** On October 29, 2004, Decedent was driving south on Interstate-25 (I-25) adjacent to the exit ramp for the St. Francis Road exit at approximately 2:00 p.m. when she encountered pieces of semi-truck tire debris on the roadway, and either struck the debris or swerved to avoid it. Decedent lost control of her vehicle, and it went into an uncontrolled slide and flipped four times, ejecting Decedent from the vehicle. Decedent died at the scene. The roadway at the location of the accident is straight and level, and at the time of the accident the weather was clear, the pavement was dry, and the center and the edge lines were clearly marked. There is no evidence of precisely how long the tire debris was on the roadway, and the Department had no actual notice of the tire debris at that location prior to the accident.

**{3}** The Department moved for summary judgment, asserting that the undisputed material facts demonstrate that the Department had no actual notice or constructive notice of the tire debris. It being undisputed that the Department had no actual notice, the Department contended that it had no constructive notice of the debris because Plaintiff was unable to pinpoint how long the debris was on the road where the accident took place. Plaintiff's response centered on its contention that the Department was negligent in failing to identify debris on the highway in a timely manner and that the Department's inspection protocols are unreasonably lax and not complied with.

**{4}** The district court granted summary judgment in favor of the Department on the grounds that the Department did not have actual or constructive notice of the tire debris and that Plaintiff's argument that the Department's failure to have a stronger or more consistent policy for the removal of debris was too speculative to prove proximate cause. Plaintiff appeals, asserting that the summary judgment order must be reversed because: (1) there are factual issues about whether the Department breached its duty to locate the tire debris on the roadway, and (2) there are factual issues regarding proximate cause.

## STANDARD OF REVIEW

**{5}** On appeal, our review of an order granting summary judgment is de novo. *Summers v. Ardent Health Servs., L.L.C.*, 2011-NMSC-017, ¶ 10, 150 N.M. 123, 257 P.3d 943. We affirm an order granting summary judgment when there is no evidence raising a reasonable doubt about any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. Thus, "the movant has the burden of showing a complete absence of any genuine material issue of fact and that such party is entitled to judgment as a matter of law."

2

*Durham v. Sw. Developers Joint Venture*, 2000-NMCA-010, ¶ 42, 128 N.M. 648, 996 P.2d 911. "[O]nce the movant makes a prima facie showing that he is entitled to summary judgment, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Cain v. Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 7, 142 N.M. 209,164 P.3d 90 (internal quotation marks and citation omitted). In our de novo review of the summary judgment record, "[w]e resolve all reasonable inferences in favor of the non-movant and view the pleadings, affidavits, depositions, answers to interrogatories, and admissions in a light most favorable to a trial on the merits." *Id.* ¶ 6. We do so because New Mexico courts "view summary judgment with disfavor, preferring a trial on the merits." *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 8, 148 N.M. 713, 242 P.3d 280.

**DISCUSSION**

**{6}** Plaintiff's complaint against the Department is for negligence under the roadway maintenance exception of the Tort Claims Act, NMSA 1978, § 41-4-11(A) (1991), which waives sovereign immunity for damages caused by the government's negligent maintenance of highways. Plaintiff's negligence action falls under this exception because "the identification and remediation of roadway hazards constitutes maintenance under Section 41-4-11." *Rutherford v. Chaves Cnty.*, 2003-NMSC-010, ¶ 25, 133 N.M. 756, 69 P.3d 1199.

**{7}** NMSA 1978, Section 41-4-2(B) (1976) of the Tort Claims Act provides in part that liability under the Act "shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." Thus, liability under the Act is "premised on traditional concepts of negligence." *Brenneman v. Bd. of Regents of Univ. of N.M.*, 2004-NMCA-003, ¶ 10, 135 N.M. 68, 84 P.3d 685 (quoting *Methola v. Cnty. of Eddy*, 1980-NMSC-145, ¶ 19, 95 N.M. 329, 622 P.2d 234 ). *See Silva v. State*, 1987-NMSC-107, ¶ 47, 106 N.M. 472, 745 P.2d 380 (Stowers, J., dissenting) ("The phrase 'traditional concepts of duty and the reasonably prudent person's standard of care, . . . refers to theories of negligence."), *limited on other grounds by Archibeque v. Moya*, 1993-NMSC-079, ¶ 14, 116 N.M. 616, 866 P.2d 344. "It is axiomatic that a negligence action requires that there be a duty owed from the defendant to the plaintiff; that based on a standard of reasonable care under the circumstances, the defendant breached that duty; and that the breach was a cause in fact and proximate cause of the plaintiff's damages." *Romero v. Giant Stop-N-Go of N.M., Inc.*, 2009-NMCA-059, ¶ 5, 146 N.M. 520, 212 P.3d 408. The absence of any of these elements is fatal to a plaintiff's claim. *Id.* We address each of these elements in turn.

**1. Duty**

**{8}** Whether the defendant owes a duty to the plaintiff, is a legal question for the courts to decide. *Id.* ¶¶ 5-6. In *Rodriguez v. Del Sol Shopping Ctr. Assocs.*, 2014-NMSC-014, ___ P.3d ___ (Nos. 33,896 and 33,949, May 8, 2014), our Supreme Court recently corrected inconsistencies in New Mexico case law on how courts are to determine whether a legal duty

is owed. The Court held that "[f]oreseeability is not a factor for courts to consider when determining the existence of a duty[.]" *Id.* ¶ 1. We follow that holding in this case.

**{9}** In *Lerma v. State Highway Department of New Mexico*, our Supreme Court stated that "the Department has a duty to exercise ordinary care in the maintenance of its highways." 1994-NMSC-069, ¶ 11, 117 N.M. 782, 877 P.2d 1085. However, the *Lerma* Court framed the duty inquiry around protecting the public from "*foreseeable harm*" on New Mexico's roadways. *Id.* ¶ 8. Our appellate courts have continued to use *Lerma*'s foreseeability of harm language in negligent roadway maintenance cases. *See, e.g.*, *Rutherford*, 2003-NMSC-010, ¶ 12 ("[The government entity] has the common law duty to exercise ordinary care to protect the general public from foreseeable harm on its roadways."); *accord Ryan v. N.M. State Highway & Transp. Dep't*, 1998-NMCA-116, ¶ 12, 125 N.M. 588, 964 P.2d 149.

**{10}** Furthermore, in cases where the government did not itself create the condition, New Mexico's negligent highway maintenance case law was developed to examine not just whether harm was generally foreseeable, but also whether the government had notice of the particular dangerous condition at issue. *See Blackburn v. State*, 1982-NMCA-073, ¶ 32, 98 N.M. 34, 644 P.2d 548 ("[W]here the State has not created the dangerous condition, no duty to remedy the dangerous condition arises until actual or constructive notice is present."). Thus, the inquiry into the government's duty to exercise ordinary care in the maintenance of its roadways has been fact-intensive, focusing on whether the government entity had actual or constructive notice under the specific circumstances of the case. *See*, *e.g.*, *Martinez v. N.M. Dep't of Transp.*, 2013-NMSC-005, ¶¶ 41-50, 296 P.3d 468 (determining that the Department's duty to erect barriers depended upon whether it had notice that collisions occurred along the stretch of highway where the collision at issue occurred); *Ryan*, 1998-NMCA-116, ¶ 7 (determining that the Department's duty depended upon whether it had actual or constructive notice of wild animal crossings creating a dangerous condition on a particular stretch of highway).

**{11}** In *Rodriguez*, our Supreme Court rejected such a fact-intensive inquiry to determine whether a duty exists. *See Rodriguez*, 2014-NMSC-014, ¶¶ 1, 3, 11 (holding that "[f]oreseeability is a fact-intensive inquiry relevant only to breach of duty and legal cause considerations. . . . not [to] whether a duty exists" and overruling prior cases insofar as they conflict with the appropriate duty analysis). The Court also warned that foreseeability can mask itself behind other terms. *See id.* ¶¶ 12-13 (explaining that considering the "remoteness" of a potential harm, by inviting a discussion of the particularized facts in the case, is essentially a foreseeability driven analysis). Thus, we do not consider "actual or constructive notice" of the tire debris Decedent encountered as determinative of the Department's duty to Decedent.

**{12}** Nevertheless, the Department's duty in this case is settled: the government has "the duty to maintain roadways in a safe condition for the benefit of the public." *Martinez*, 2013-NMSC-005, ¶ 18. This includes a duty to conduct reasonable inspections of roadways, of

which identification and removal of dangerous debris from roadways are necessary corollaries. *See Blackburn*, 1982-NMCA-073, ¶¶ 17, 32 (stating that liability for a dangerous condition on a roadway involves situations "in which the State did not create the dangerous condition, but knew or should have known about it, and corrected it"); *see also Rutherford*, 2003-NMSC-010, ¶ 12 ("The identification of hazards on roadways is essential if governmental entities are to fulfill their responsibilities of keeping the highways safe for the motoring public."). We therefore conclude that the Department owed a duty to Decedent to identify and remove dangerous debris from the highway.

## 2. Breach

{13}   "The responsibility for determining whether the defendant has breached a duty owed to the plaintiff entails a determination of what a reasonably prudent person would foresee, what an unreasonable risk of injury would be, and what would constitute an exercise of ordinary care in light of all the surrounding circumstances." *Pollock v. State Highway & Transp. Dep't*, 1999-NMCA-083, ¶ 11, 127 N.M. 521, 984 P.2d 768 (alteration, internal quotation marks, and citation omitted). One can be negligent by either acting or failing "to do an act which one is under a duty to do and which a reasonably prudent person, in the exercise of ordinary care, would do in order to prevent injury." UJI 13-1601 NMRA. Ordinary care is "that care which a reasonably prudent person would use in the conduct of the person's own affairs." UJI 13-1603 NMRA. What constitutes ordinary care will vary under the circumstances. *Id.* "As the risk of danger that should reasonably be foreseen increases, the amount of care required also increases." *Id.* All of the surrounding circumstances should be considered when evaluating whether ordinary care was used. *Id.*

{14}   The Department argued that it owed Decedent no duty to clear the debris because it had no actual or constructive knowledge of its presence at the particular location and the particular time that the accident occurred. Following *Rodriguez*, and having concluded that the Department had a duty in this case, we consider notice to determine whether there is a question of fact as to whether the Department breached its duty of reasonable inspection. *See Martinez*, 2013-NMSC-005, ¶ 21 ("[T]he term maintenance requires a reasonable response to a *known* dangerous condition on a roadway." (emphasis added)); *Blackburn*, 1982-NMCA-073, ¶ 17 (stating the plaintiff must prove that the defendant "had actual or constructive notice of the dangerous condition a sufficient time prior to the time of the accident so that measures could have been taken to protect against the dangerous condition").

{15}   Here, although it is undisputed that the Department had no actual notice of the particular debris at issue, the Department does not argue that it was not aware of the risk to motorists that roadway debris creates generally. Indeed, in the Department's motion for summary judgment, it acknowledged that its maintenance responsibilities include identifying and removing hazardous litter from roadways. Thus, the issue before us in this case is whether there are material issues of fact about whether the Department can be charged with constructive notice of the tire debris. *See Phillips v. N.C. Dep't of Transp.*, 684 S.E.2d 725,

731 (N.C. Ct. App. 2009) (stating that constructive notice "is defined as information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring about it." (quoting *State v. Poteat*, 594 S.E.2d 253, 255-56 (N.C. Ct. App. 2004)); *Kemer v. Ohio Dep't of Transp.*, No. 09AP-248, 2009 WL 3495006, at * 5 (Ohio Ct. App. Oct. 29, 2009) ("Constructive notice of a defective condition can be imputed to a defendant when the plaintiff presents evidence establishing that the defect could or should have been discovered.").

**{16}** The depositions of the Department's employees who were responsible for maintaining the stretch of road where the accident occurred are sufficient for us to determine whether summary judgment was properly granted to the Department. Edward Martinez is the Department's maintenance supervisor for the Santa Fe area. He reports to Mark Anaya, the area maintenance supervisor which includes Santa Fe County. Mark Anaya's supervisor in turn is Miguel Gabaldon, the maintenance engineer, and Mr. Gabaldon in turn reports to John McElroy, the District 5 engineer.

**{17}** Mr. Martinez is in charge of all maintenance of state highways in the area where the accident occurred. His responsibilities include litter pickup as well as repair of potholes, signs, guardrails, fences, snow removal, and traffic control at accidents. However, he has received no training regarding procedures for removal of litter or debris from state highways and, before this accident, to his knowledge, no members of his crew received training on removal of debris or litter from roadways.

**{18}** His crew members are responsible for removing debris from the highway within a "reasonable amount of time"—within two hours—once they are notified of debris on the highway. In addition, his crew is told to remove debris, such as a tire tread, from the highway when they actually see it, whether or not they are performing their duties at the time. On the day of the accident, two crew members passed the scene of the accident on their way to work, sometime before 7:30 a.m. when their shift started, and they did not report seeing any debris on the highway at the accident scene.

**{19}** According to Mr. Martinez, the Department has an obligation to patrol highways with enough frequency to locate debris on the highway that is not reported in a call to the Department. Thus, the Highway Maintenance Management System (HMMS) Handbook requires "litter pick up" which "means to go out there and pick up litter in right of way fences of New Mexico DOT." However, there is no specification in the HMMS Handbook as to how often to conduct "litter pick up." Moreover, although Mr. Martinez recognizes that a highway with dangerous debris on it has a greater chance for an accident than a highway with less traffic, he has not made a set schedule for doing litter pick up, and it is performed randomly at his discretion.

**{20}** The HMMS Handbook also requires that "road patrols" be conducted, and if tire tread is encountered during a road patrol, it is to be picked up. However, the HMMS

Handbook in effect on the day of the accident did not specify how often a road patrol should be conducted, even on a heavily traveled road such as I-25. The daily work reports which he or his assistant prepares every day show that between October 25 and October 29, 2004, his crew performed no work in the area around I-25 and the St. Francis exit. He also cannot tell from the daily work reports when a road patrol was last performed by the Department where the accident occurred before October 29, 2004. In fact, Mr. Martinez did nothing to identify and remove debris from the highway, other than to remove debris actually reported to the Department, although he recognizes that the Department also has an obligation, at some point, to remove dangerous debris from the highway that is not reported.

{21} Mr. Martinez's supervisor is Mark Anaya, the area maintenance supervisor for the Santa Fe area. Mr. Anaya agrees that the Department is responsible for keeping highways safe for the motoring public, and this includes removing hazards from the highway. Its responsibility notwithstanding, Mr. Anaya is unaware of any administrative directives put out by the Department that outline a policy for dealing with debris in roadways that create hazards to the motoring public.

{22} Mr. Anaya testified that the Department has a duty to remove hazards that are reported to exist in the highway. The Department also has an obligation to conduct road patrols to go out and discover unreported road hazards. At some point, the Department should discover an unreported hazard, but he cannot state how long—one hour, one day, one week, or one month—before it is unacceptable for the hazard to remain undiscovered.

{23} These duties notwithstanding, he has never considered requiring an employee to drive every day in both directions of the area of I-25 under his supervision to make sure there are no hazards or dangerous conditions in the highway due to the volume of traffic it handles. Furthermore, he cannot say that Mr. Martinez's crew performs daily visual inspections of I-25 where the accident occurred, and he cannot tell when, before October 29, 2004, Mr. Martinez's crew last performed a road patrol on I-25 in the area of the accident. The only documented litter pick up done in the area was by an inmate crew on October 28, 2004.

{24} Miguel Gabaldon is the Department maintenance engineer for the area where the accident occurred. He said there is no written standard of care in the HMMS Handbook regarding removal of debris from state highways. However, he testified the Department satisfies its obligation to remove debris from the highways, such as the tire debris in this case, by requiring the Department workers to remove it if they see it while performing their duties, and by removing it as soon as possible upon being notified of such debris. As to unreported debris, such as the tire debris in this case, Mr. Gabaldon stated that the Department should find it "[w]ithin a reasonable time frame" if the Department employees are doing their patrols. In this regard, while the Department has no criteria for how often a highway maintenance crew worker should drive the highways, the HMMS Handbook does specify that the supervisor (Mr. Martinez) is to drive or patrol all of the roads he is responsible for once per week, if possible. Mr. Gabaldon said that according to the HMMS

7

Handbook, the last documented patrol of the accident scene should have been the week before the accident by Mr. Martinez, the supervisor.

**{25}**    John McElroy was the District 5 engineer for the Department. Before October 2004, the means for identifying road debris in District 5 consisted of road patrols by the Department personnel going to work sites, and notification to the Department by a member of the public or a police agency. Mr. McElroy believes there are signs placed on the highway with a 1-800 number to call, although he does not know where such signs are placed.

**{26}**    Mr. McElroy testified that before October, 2004, there was a big problem with a lot of debris on this stretch of I-25 where the accident occurred. Because of this problem, the area should have been given a lot of priority in terms of where maintenance crews were performing their patrols. From his perspective, the Santa Fe patrol crew should have been conducting litter pickup on this stretch of I-25 on a regular basis, probably twice per week. However, before October 2004, the patrol supervisor was not required to travel on I-25 where the accident occurred to survey the roadway for debris that might present a hazard or danger.

**{27}**    Mr. McElroy testified that if the Department has actual notice that semi-truck debris is on the highway, it is "probably not" acceptable for the debris to remain on the highway for one hour. If the Department has no actual notice of such debris, it is not acceptable, according to Mr. McElroy, for it to remain on the roadway for one day, twelve hours, or even six hours before the Department identifies and removes it. It is unknown how long the tire debris was on the highway in this case before the accident.

**{28}**    The foregoing evidence notwithstanding, the Department points to daily work reports, which it asserts show that between January 1, 2004, and the date of the accident on October 29, 2004, six hundred and seventy-six "separate activities" were logged and that one hundred fifty-seven "separate litter pickup activities" were performed on I-25 "between Glorieta and La Bajada Hill," which includes the area where the accident occurred. Moreover, according to the Department, these same daily work reports show that in the twenty-nine days prior to the accident, the Santa Fe Patrol performed ten litter pickup activities "within a few miles of the accident location" and five road patrols between Glorieta and La Bajada Hill. These included "five separate litter pickup activities, all within five miles of the accident location" between October 25, 2004, and the date of the accident. In addition to the foregoing, the Department states that under contract with the Department of Corrections, inmate crews performed litter pickup "at or near the accident location" on thirty-five separate locations between January 17, 2003, and November 10, 2005, and that "one of these events" was the day before the accident.

**{29}**    We conclude that the foregoing evidence raises issues of fact as to whether the Department had constructive notice of the tire debris and whether the Department breached its duty to Decedent to timely identify it and remove it. Specifically, the evidence presents

8

issues of fact about whether the Department failed to exercise ordinary care in its duty to perform reasonable inspections of the roadway and remove dangerous tire debris from it by: (1) failing to provide its employees and supervisors with adequate training to remove litter or debris from the highway; (2) failing to patrol the highway with sufficient frequency to locate and remove dangerous debris from the highway; (3) failing to comply with its own standards on how often the highway should be patrolled; (4) failing to locate and remove the tire debris in a timely manner; (5) failing to have an adequate system by which it can be notified of debris on the highway. Thus, whether the Department had constructive notice of the tire debris is a question of fact for the jury to decide. *See Rutherford*, 2003-NMSC-010, ¶ 15 ("Whether a governmental entity exercises ordinary care in the identification of the hazard is a question of fact for the jury."); *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 33, 134 N.M. 43, 73 P.3d 181 (refusing to address whether the defendant breached the duty of ordinary care because it is a question of fact for the jury); *Ryan*, 1998-NMCA-116, ¶ 8 (stating constructive notice is a question of fact); *cf. Martinez*, 2013-NMSC-005, ¶ 41 ("Notice becomes a question of law only if no room for ordinary minds to differ exists." (internal quotation marks and citation omitted)).

**{30}**     The Department nevertheless argues that because it is unknown how long the tire debris was actually on the road before the accident occurred, and imputing constructive notice of a danger depends on how long the dangerous hazard was present, it is entitled to summary judgment. We disagree. *Ortega v. Kmart Corp.*, 36 P.3d 11, 13 (Cal. 2001), acknowledged that in a premises liability case, a plaintiff has the burden of proving that the business owner had actual or constructive notice of the defect in sufficient time to correct it. In light of this requirement, the question presented in that case was:

> If the plaintiff has no evidence of the source of the dangerous condition or the length of time it existed, may the plaintiff rely solely on the owner's failure to inspect the premises within a reasonable period of time in order to establish an inference that the defective condition existed long enough for a reasonable person exercising ordinary care to have discovered it?

*Id.* The court held: "[E]vidence of the owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition [existed] long enough to give the owner the opportunity to discover and remedy it." *Id.* We agree. When there is a duty to inspect, evidence showing that there was a failure to inspect within a reasonable period of time under the circumstances is evidence that the dangerous condition could or should have been discovered but for the untimely inspection. "Where a condition has existed for such a length of time that the public entity might have known of the condition by the exercise of reasonable care and diligence, constructive notice exists." *Mtengule v. City of Chicago*, 628 N.E.2d 1044, 1048 (Ill. App. Ct. 1993).

**{31}**     The foregoing principles were applied in *Imburgia v. Ohio Department of Transportation*, 114 Ohio Misc.2d 38, 759 N.E.2d 482 (Ohio Ct. Cl. 1999), a "Decision of Liability" made by a trial judge sitting on the Ohio Court of Claims. After the car in which

the plaintiff was a passenger pulled over onto a highway median with a flat tire, she got out of the car and stepped into an electrical junction box, severely injuring her left foot, ankle, and calf. *Id.* at 40-41, 759 N.E. at 484. These boxes are cylindrical in shape and recessed into the ground in the median next to roadway lights with underground lighting circuit cable splices. *Id.* at 40, 759 N.E.2d at 484. They are normally covered with a concrete lid, but the concrete lid on this box was broken and had partially fallen into the junction box, which was cluttered with additional debris. *Id.* at 40-41, 759 N.E.2d at 484. The court first determined that the Ohio Department of Transportation (ODOT) had a duty to maintain the electrical boxes as part of its duty to maintain the roadways in a reasonably safe condition. *Id.* at 41, 759 N.E.2d at 485. The ODOT had no actual notice that the concrete lid covering the box was damaged, and the case turned on whether the ODOT was charged with constructive notice of the damage. *Id.* at 42, 759 N.E.2d at 486. The ODOT had no policy regarding routine inspection of the boxes, but it had actual notice that mowers had previously damaged such boxes in other locations, and upon becoming aware that a concrete lid was broken, it would make the necessary repairs. *Id.* at 4, 759 N.E.2d at 485-86. Given the condition of the box, and its concrete lid, and the apparent length of time that the debris had accumulated in the box, the court concluded, as a fact finder, that the ODOT had constructive notice of the dangerous condition of the box. *Id.* at 42, 759 N.E.2d at 486. *See City of Jackson v. Internal Engine Parts Grp., Inc.*, 2003-CA-02772-SCT (¶ 10) (Miss. 2005) (affirming the trial court finding that the defendant city had either actual or constructive notice of debris obstructions in a drainage ditch by its negligent failure to inspect and maintain the drainage ditch). We find these cases and their reasoning persuasive and consistent with New Mexico jurisprudence. *See Pollock*, 1999-NMCA-083, ¶ 13 (rejecting the Department's argument that the plaintiff needed to show where a wrong-way driver entered the highway and how long she had been driving the wrong way to establish notice); *Martinez*, 2013-NMSC-005, ¶ 42 (rejecting the defendant's argument that it needed notice of a recurring accident problem at the particular accident site and concluding "more latitude" was appropriate to decide the question of notice). This case presents no basis for modifying our existing precedent. We therefore do not require Plaintiff to supply evidence demonstrating precisely how long the tire debris was on the highway to overcome summary judgment.

**{32}** We emphasize that the length of time which must pass before constructive notice may be found varies with each specific situation, and the fact that a dangerous condition exists is not sufficient, by itself, to conclude that a duty to inspect was breached. Furthermore, nothing we have said herein is meant to imply that the Department is an insurer of the safety of the highways in New Mexico. However, when the Department has actual or constructive knowledge of a dangerous condition on the highways, it has a duty to exercise ordinary care under the circumstances to prevent injury to the motoring public.

**{33}** The jury must decide whether the Department's system for identifying and removing specific pieces of debris is so lacking as to impute notice of this particular debris on the Department or if the Department's actions were reasonable under the circumstances. Reasonable minds could differ in answering that question. A reasonable juror could agree with Plaintiff that the Department's policies of identifying and removing dangerous debris

were inadequate; or the jury could conclude that the Department acted reasonably and that any additional policies would be unreasonable. "Questions of 'reasonableness' are quintessential issues for a jury to resolve. In our system of justice, we place special confidence in juries to sort through conflicting evidence and come to a reasonable conclusion." *Martinez*, 2013-NMSC-005, ¶ 47.

**3. Proximate Cause**

**{34}** The Department argues that even if it owed Decedent a duty and breached that duty, her death was not the proximate result of its negligence.

**{35}** This element concerns "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Herrera*, 2003-NMSC-018, ¶ 8. "An act or omission may be deemed a 'proximate cause' of an injury if it contributes to bringing about the injury, if the injury would not have occurred without it, and if it is reasonably connected as a significant link to the injury." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 34, 138 N.M. 189, 118 P.3d 194; *see* UJI 13-305 NMRA (defining causation); *Galvan v. City of Albuquerque*, 1973-NMCA-049, ¶ 18, 85 N.M. 42, 508 P.2d 1339 ("Proximate cause is that which, in a natural or continuous sequence, produces the injury and without which the injury would not have occurred."). Determining proximate cause is a question of fact for the jury. *Id.* ¶ 12. Only when the facts are undisputed "and the reasonable inferences from those facts are plain and consistent," does proximate cause become an issue of law. *Id.*

**{36}** The Department argues that even if Plaintiff shows that the Department breached its duty by failing to provide more litter patrols, without being able to show that the tire debris was on the road for an unreasonable length of time, Plaintiff cannot prove that the Department's failure to act proximately caused the accident. The Department insists that since the "tire debris *could* have been deposited mere seconds before the accident[,]" no reasonable juror could find that the Department's negligence caused the accident. (Emphasis added.) This argument is too speculative to decide as a matter of law. The jury must decide whether remedies could have prevented this accident. *See Ryan*, 1998-NMCA-116, ¶ 17 (deciding that the jury must decide between the parties' disputing theories about whether animal crossing warning signs could have prevented the plaintiff's collision with an elk). We are therefore unpersuaded that no reasonable juror could find proximate cause under the facts before us.

**CONCLUSION**

**{37}** The district court order granting summary judgment in favor of the Department is reversed.

**{38} IT IS SO ORDERED.**

11

_____
MICHAEL E. VIGIL, Judge

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**J. MILES HANISEE, Judge**