The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **June 26, 2023**

**No. A-1-CA-39694**

**SANDRA CHAVEZ, as Personal Representative of the Estate of Briana Chavez,**

Plaintiff-Appellant,

v.

**CONVERGYS CORPORATION; CONVERGYS CUSTOMER MANAGEMENT GROUP, INC.; and SPIRIT CS LAS CRUCES NM, LLC,**

Defendants-Appellees,

and

**BINNS CONSTRUCTION, INC.; BINNS LTD. CO.; and ADEVCO CORPORATION,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Francis J. Mathew, District Court Judge**

Jaramillo Law Firm
David J. Jaramillo
Albuquerque, NM

Liles White PLLC
Stuart R. White
Kevin W. Liles
Rob George
Corpus Christi, TX

for Appellant

Butt, Thornton & Baehr, P.C.
Monica R. Garcia
Rheba Rutkowski
Sarah L. Shore
Albuquerque, NM

for Appellees Convergys Corporation and Convergys Customer Management Group, Inc.

Ylaw, P.C.
Joseph B. Wosick
Sean E. Garrett
Albuquerque, NM

for Appellee Spirit Las Cruces NM, LLC

**OPINION**

**BUSTAMANTE, Judge, retired, sitting by designation.**

{1}     This case requires us to revisit the duty analysis for a premises liability claim in light of *Rodriguez v. Del Sol Shopping Center Associates., L.P.*, 2014-NMSC-014, ¶¶ 1, 19, 326 P.3d 465. Plaintiff Sandra Chavez, as personal representative of the estate of Briana Chavez (Decedent), asserts that Decedent was hit and killed by a bus adjacent to property owned and leased by Defendants in this case. The district court decided that Defendants—the landlord and tenant—owed no duty to Decedent and granted summary judgment. Plaintiff appeals. Concluding that both the landlord and tenant did owe Decedent a duty, we reverse and remand to the district court for further proceedings consistent with this opinion.

**BACKGROUND**

{2}     Decedent was killed adjacent to property on Del Rey Boulevard in Las Cruces (the property) owned by Defendants Spirit CS Las Cruces NM LLC (Spirit) and leased by Defendants Convergys Corporation and Convergys Customer Management Group (collectively, Convergys). Convergys runs a call center where Decedent worked prior to the fatal collision. A bus stop is located across the street from the property. On December 26, 2017, Decedent went to Convergys to pick up her final paycheck. Around 6:00 p.m., Decedent was hit and killed by a city bus driving south on Del Rey Boulevard across from the property.

{3} Plaintiff's second amended complaint included broad allegations of negligence by Defendants. The gist of the assertions was that Defendants failed to properly take into account the effect development of the property would have on the safety of employees and others using and visiting the property. Plaintiff emphasized that the property was located in a rural, largely undeveloped plat of land and the development would create increased traffic and uncertainty. Plaintiff asserted that Defendants had the duty and ability to design the property in a way "that would keep persons such as [Decedent] reasonably safe." Plaintiff included specific assertions that Convergys "had the ability to place light poles, lighting, a crosswalk, and other traffic control devices that would aid in pedestrian traffic and improve safety."

{4} Convergys filed a motion for summary judgment, arguing that Plaintiff could not establish as a matter of law that Convergys owed Decedent a duty. In the briefing, Convergys focused primarily on the allegation that Defendants could have installed safety measures on the public road and right-of-way. Plaintiff's response to Convergys' motion for summary judgment emphasized that her complaint also included allegations focused on Convergys' failure to take safety measures on its property that created a danger on the adjoining public roadway. After briefing and a hearing, the district court granted Convergys' motion.

{5} Just before the district court entered its order on Convergys' motion, Spirit filed a motion for summary judgment, arguing it also did not owe Decedent a duty.

Spirit's motion echoed Convergys' assertions concerning its lack of a duty to take any measures on the public right-of-way. Spirit also argued that it had no duty because it was a nonpossessory landlord.

{6}     Plaintiff's response to Spirit's motion repeated its argument that the complaint made broader allegations than just the conditions of the roadway. Plaintiff also asserted that she was "not arguing that any of these Defendants should have done anything in the roadway or at the bus stop." We interpret this statement to mean that Plaintiff was abandoning her allegations concerning any duty to change the public right-of-way. We also note that Plaintiff does not make any argument on appeal that Defendants' had a duty concerning the right-of-way, and we deem the argument abandoned.

{7}     Plaintiff also argued Spirit had a duty because the lease for the property gave it the right to reenter the premises to "perform any acts related to . . . safety," and because under the lease it had a duty to maintain the common areas of the property. Once briefed and argued, the district court granted Spirit's motion for summary judgment. Plaintiff appeals from the district court's ruling on both motions.

**DISCUSSION**

**I.     Standard of Review**

{8}     "Summary judgment is reviewed on appeal de novo." *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548. "Summary judgment is

appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. We review the evidence "in the light most favorable to the party opposing summary judgment." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146.

## II. An Owner/Occupier of Land Owes a Duty of Reasonable Care in These Circumstances

{9} To prevail on a negligence claim, a plaintiff must prove "the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Spencer v. Health Force, Inc.*, 2005-NMSC-002, ¶ 18, 137 N.M. 64, 107 P.3d 504 (internal quotation marks and citation omitted). "Whether the defendant owes a duty to the plaintiff, is a legal question for the courts to decide." *Lujan v. N.M. Dep't of Transp.*, 2015-NMCA-005, ¶ 8, 341 P.3d 1. That legal question is one of "policy made with reference to legal precedent, statutes, and other principles comprising the law." *Morris v. Giant Four Corners, Inc.*, 2021-NMSC-028, ¶ 10, 498 P.3d 238 (internal quotation marks and citation omitted).

{10} Summary judgment on a negligence claim is appropriate only "in exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases," *Rodriguez*, 2014-NMSC-014, ¶ 13

(alteration, internal quotation marks, and citation omitted), or when there is simply no evidence that could support a plausible inference in the plaintiff's favor on the jury questions of breach and legal cause. *Id.* ¶ 24.

{11}    The issue before us is whether an owner/occupier of land located adjacent to a roadway has a duty to provide other reasonable safety features on the premises for the benefit of its invitees coming to and going from the property during times when it is naturally dark. We determine it does and explain.

{12}    It is well established that an "owner/occupier owes a duty of ordinary care under the circumstances, . . . including the duty to exercise ordinary care to prevent harmful conduct from a third person, even if the third person's conduct is intentional." *Rodriguez*, 2014-NMSC-014, ¶ 5; *see also* UJI 13-1309 NMRA ("An [owner] [occupant] owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor [, whether or not a dangerous condition is obvious]."). "In determining whether a duty of care exists or should be expanded or contracted, a court's analysis should focus on policy considerations." *Morris*, 2021-NMSC-028, ¶ 11 (internal quotation marks and citation omitted). Foreseeability does not play a part when the court assesses the existence or scope of a duty. *Rodriguez*, 2014-NMSC-014, ¶¶ 1, 4; *id.* ¶ 1 (adopting the Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7 (2010) for duty analysis).

{13} In addition to these general principles of premises liability, New Mexico case law has three seminal premises liability cases that support finding a duty in this circumstance. The most relevant of the three historical duty cases is *Bober v. New Mexico State Fair*, 1991-NMSC-031, 111 N.M. 644, 808 P.2d 614. In *Bober*, the plaintiff alleged that the State Fair had failed to properly control traffic leaving the fairgrounds, resulting in a car crash on a roadway bordering the fairgrounds. *Id.* ¶¶ 1-2, 30. Our Supreme Court succinctly determined, "[W]e come to the simple proposition that lies at the core of the holding in *Mitchell*[ *v. C & H Transportation Co.*, 1977-NMSC-045, 90 N.M. 471, 565 P.2d 342] (and many other cases like it): Every person has a duty to exercise ordinary care for the safety of the person and the property of others." *Bober*, 1991-NMSC-031, ¶ 10 (internal quotation marks and citation omitted). Our Supreme Court concluded in relevant part that the duty of a landowner to exercise ordinary care is not determined "by identity of the person injured . . . or by the happenstance that the accident and resulting injury occur inside or outside the property boundary." *Id.* ¶ 12. Accordingly, "an occupier of land has the duty to avoid creating an unreasonable risk of harm to persons outside the land, such as in an adjoining roadway." *Id.* ¶ 16.

{14} Convergys argues that *Bober* is not controlling because it relies on foreseeability and because the facts of this case are distinguishable. First, we do not agree that foreseeability played a role in *Bober*. *Bober* held—in concert with

*Mitchell*—that an owner/occupier of property could be held liable for the off-premises effects of its on-premises negligence. *Bober*, 1991-NMSC-031, ¶ 10. *Bober*'s reference to *Udy v. Calvary Corp.*, 780 P.2d 1055 (Ariz. Ct. App. 1989), made clear that foreseeability played a role in determining the scope of the duty, not the existence of the duty. *Bober*, 1991-NMSC-031, ¶ 13. We reiterate that we are applying an established duty, not creating a new one or expanding one. The duty of reasonable care of landowners and occupiers is settled law. *Rodriguez*, 2014-NMSC-014, ¶ 5. Second, the factual distinctions between this case and the facts of *Bober* are of little moment in the determination of duty in these circumstances. Requiring comparable facts from one case to another to establish relevance runs the risk of equating duty with the specific facts of conduct. Such an inquiry tends to "rigidify the concept of negligence—a concept which, by definition, must vary from case to case, depending upon the relationship of the parties and the facts of each case." *Coburn v. City of Tucson*, 691 P.2d 1078, 1080 (Ariz. 1984) (in banc), *cited with approval in Bober*, 1991-NMSC-031, ¶¶ 14, 15, 17. Once again, we are considering a well-established duty here.

{15} Spirit argues that *Bober* is distinguishable because in *Bober*, the State Fair created the dangerous condition, but here, the dangerous condition is darkness, which "is a naturally occurring event in nature." Spirit posits that *Bober* cannot suggest that an owner/occupier has an "affirmative duty to use its premises to cure

7

the naturally occurring darkness on the public roadway." As Plaintiff notes, *Bober* is clear that it was assessing "a landowner's duty to avoid creating *or permitting* an unsafe condition or activity on the premises." *Id.* ¶ 1 (emphasis added). *Bober* is not limited to a dangerous condition created by the landowner/occupier but extends to one it permits to persist, which could include a dangerous amount of darkness in the area. Moreover, the record shows that the potentially dangerous condition here was exacerbated by the development of the land and its use for a business with employees and visitors coming and going. Spirit's argument assumes that a landowner/occupier's duty presumptively ends at the property line. *Mitchell* and *Bober* belie that notion.

{16}    *Bober*'s holding is in accord with and supported by two other historical premises liability cases. *See Monett v. Doña Ana County Sheriff's Posse*, 1992-NMCA-096, ¶ 18, 114 N.M. 452, 840 P.2d 599 ("[A]n owner or occupier of property has a duty to maintain the property in a safe condition, and that the duty to avoid creating or permitting an unsafe condition to exist on the premises is not limited by the physical boundaries of the land."); *Calkins v. Cox Estates*, 1990-NMSC-044, ¶ 16, 110 N.M. 59, 792 P.2d 36 (determining that an "injury resulting from a breach of that duty [to exercise reasonable care] need not occur on the property for the lessor to be liable, if the breach proximately causes the harm"). To the extent Convergys

differentiates *Monett* from this case, it relies on the case's breach analysis, which is not an issue before this Court.

{17} These premises liability cases together demonstrate that "[a]n [owner] [occupant] owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor [, whether or not a dangerous condition is obvious]." UJI 13-1309 NMRA. Given that the duty of reasonable care encompasses a landowner's duty to guard against a dangerous situation that existed at the exit from its premises onto the adjacent roadway, *Bober*, 1991-NMSC-031, ¶ 18, an adjacent occupier's duty to keep an area where invitees and golf carts were simultaneously traversing reasonably safe, *Monett*, 1992-NMCA-096, ¶ 22, and a lessor's duty to maintain a fence in a common area with an adjacent frontage road, *Calkins*, 1990-NMSC-044, ¶ 19, the duty of reasonable care also encompasses a landowner/occupier's duty to their invitees to provide safety features adjacent to a roadway.

{18} As *Rodriguez* instructs, we turn now to consider whether "specific policy reasons, unrelated to foreseeability considerations, [establish] that a defendant does not have a duty or that an existing duty should be limited." 2014-NMSC-014, ¶ 1. Convergys argues that "concerns about unpredictability and limitless liability based on expansive theories of the duties of landowners" raised in *Stetz v. Skaggs Drug Centers, Inc.*, 1992-NMCA-104, ¶ 12, 114 N.M. 465, 840 P.2d 612, are policy considerations that establish the duty here should be contracted. In *Stetz*, the plaintiff

9

was injured when she fell on a sidewalk leading into a store located in a shopping mall. *Id.* ¶ 2. This Court stated that "in the context of a shopping mall, it is black-letter law that it is the mall owner, and not the various shopkeepers, who has legal responsibility for conditions in the common areas of a shopping center." *Id.* ¶ 8. It then refused to find the store liable for a condition in the common area, which the shopping mall controlled. *Id.* ¶¶ 7, 9. *Stetz* is limited to the determination of control over common areas in a shopping mall situation. *Id.* ¶ 8. In addition, it was decided before *Rodriguez*. Finally, it is notable that our Court in *Stetz* recognized the "traditional rule that one who owns or controls property has a duty to refrain from creating or permitting conditions on such property that will foreseeably lead to an unreasonable risk of harm to others beyond the property's borders." *Id.* ¶ 9. Thus, *Stetz* is not persuasive authority in this context.

{19}     Convergys' and Spirit's general concerns regarding "limitless liability" is simultaneously unavailing. We first note that a determination of duty does not establish liability. A plaintiff must also meet their burden to establish breach of duty, proximate cause, and cause in fact. *Spencer*, 2005-NMSC-002, ¶ 18. We take no position on whether Defendants failed to provide adequate safety features, or if that failure was the proximate cause or cause in fact of Decedent's death. Plaintiff's remaining burdens are sufficient to establish that our decision does not create "limitless liability" based on this determination of duty. Second, Defendants'

10

arguments as to "unlimited liability" are rooted in their arguments concerning expansion of the duty to encompass work on and maintenance of the public right-of-way. As we noted at the beginning of this opinion, these theories and assertions have been abandoned and are not before us. The sole question here is whether Defendants had a duty to install safety features on their owned or leased property.

**{20}** Like the plaintiffs in *Rodriguez*, Plaintiffs here "are not seeking a broadened standard of care; they simply contend that [Defendants] breached the duty of ordinary care." *See* 2014-NMSC-014, ¶ 15. Thus, we need not articulate specific policy reasons to broaden the duty.

### III. Spirit Had a Duty of Care to Decedent as a Landlord with the Right to Reenter the Property

**{21}** We next turn to Plaintiff's argument that Spirit, a nonpossessory landlord, owed Decedent a duty based on Spirit's retained right to reenter the property and the common law duty to maintain the common areas. We agree that Spirit owed Decedent a duty based on its right to reenter the premises.

**{22}** "The duty of a landowner generally to keep the premises in a safe condition arises from its position of control over the premises." *Gourdi v. Berkelo*, 1996-NMSC-076, ¶ 14, 122 N.M. 675, 930 P.2d 812. "When a landlord leases premises, he or she generally relinquishes control for the period of the tenancy." *Id.* ¶ 13. Based on this lack of control, the landowner "is under no duty to inspect [the premises'] condition while a tenant remains in possession, and is not chargeable with liability

11

for defects not made by him [or her] or under his [or her] direction or for a failure to make repairs." *Mitchell*, 1977-NMSC-045, ¶ 19. However, "a landlord who retained a right to enter and inspect the premises for purposes of repair [is] liable to third parties for injuries resulting from defects[,] which ordinary care in making such an inspection would have revealed." *Id.* ¶ 20; *see Torres v. Piggly Wiggly Shop Rite Foods, Inc.*, 1979-NMCA-093, ¶ 6, 93 N.M. 408, 600 P.2d 1198 (noting a landlord's liability continues "where the landlord has reserved the right to enter to make repairs, even in cases where he [or she] has not covenanted to make any repairs"). "[A] landlord who reserves a privilege which bears directly upon his [or her] relation to the passerby has not surrendered or divested himself [or herself] of the duty of care." *Mitchell*, 1977-NMSC-045, ¶ 20.

{23}    The lease between Spirit and Convergys states:

> Landlord shall have the right to . . . enter the Leased Premises *at reasonable times and upon reasonable notice* and at any time in the event of an emergency *to inspect, alter or repair the Leased Premises or* the Building *and to perform any acts related to the safety, protection,* reletting, sale or improvement of the Leased Premises or the Building.

(Emphases added.) The contract provides a right of reentry to Spirit to perform acts related to safety, which would include providing safety features. *See id.* ¶¶ 18-20 (holding a party who "retained the right to go on the premises to make whatever repairs or changes that it considered necessary" was not relieved of responsibility pursuant to the right to reenter exception).

{24} Spirit argues that it cannot have a duty because it was not aware of the need for inspection. *See Gourdi*, 1996-NMSC-076, ¶ 15 ("Only when the landlord who has reserved this right has notice of facts indicating the need to make an inspection should it be charged with knowledge of any dangerous condition that a reasonable inspection would have revealed."). Spirit's argument is unpersuasive. Spirit knew the facility was located in a remote, unlighted area. A reasonable inspection would have revealed whether the property incorporated reasonable safety features on the edge of the premises. Therefore, Spirit had a duty based on its right to reenter the premises. *Cf. id.* (determining a reasonable inspection would not have revealed a latent defect in the drainage pipe, thus the landlord did not have a duty based on the right to reenter). Spirit cites nothing for its assertions that "[s]uch a generic observation . . . does not rise to the level of notice required to impose a duty" and that Spirit needed "specific knowledge of a dangerous condition that would have triggered its duty to inspect and, by extension, a duty to 'repair' darkness on a public roadway." *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that where arguments are not supported by cited authority, we presume counsel was unable to find supporting authority, will not research authority for counsel, and will not review issues unsupported by authority).

{25} Given that Spirit reserved the right to perform acts related to inspection, alteration, and repair of the property, it has not surrendered the duty of care

established under these circumstances. Thus, we reverse the district court's decision that Spirit did not have a duty to Decedent. Since we have reversed the district court's dismissal as to both Convergys and Spirit, we need not address Plaintiff's argument regarding Spirit's duty in common areas, discovery, and the district court's failure to cite policy reasons to support its dismissal.

**CONCLUSION**

{26}     We reverse the district court's determinations that Convergys and Spirit owed no duty to Decedent, and remand to the district court for further proceedings consistent with this opinion.

{27}     **IT IS SO ORDERED.**


_____

**MICHAEL D. BUSTAMANTE, Judge, retired, sitting by designation.**

**WE CONCUR:**


_____

**JANE B. YOHALEM, Judge**


_____

**GERALD E. BACA, Judge**