The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number:_____

Filing Date: December 11, 2024

**No. A-1-CA-40615**

**GLORIA VALDEZ,**

Plaintiff-Appellant,

v.

**NEW MEXICO DEPARTMENT OF TRANSPORTATION,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**James A. Noel, District Court Judge**

Candelaria Law LLC
Jacob R. Candelaria
Albuquerque, NM

for Appellant

Ripley B. Harwood, P.C.
Rip Harwood
Albuquerque, NM

for Appellee

**OPINION**

**BACA, Judge.**

**{1}** Plaintiff Gloria Valdez filed a complaint for negligence against Defendant New Mexico Department of Transportation (DOT) after a large tree located on private land uprooted and fell on her car. The district court dismissed Plaintiff's case with prejudice for failure to state a claim for which relief can be granted. *See* Rule 1-012(B)(6) NMRA. Plaintiff argues on appeal that the district court erred in dismissing her complaint because she contends that DOT's duty to maintain roadways includes the duty to remediate dangerous conditions on private property that abuts a roadway. We affirm.

**BACKGROUND**

**{2}** Plaintiff parked her car on the shoulder of the roadway near the intersection of Old Highway 44 and Camino Del Pueblo in the Town of Bernalillo so she could access the adjacent mailboxes. This section of roadway and the shoulder on which Plaintiff parked her car abuts private property. There was a large tree in noticeably poor condition on the property and the tree fell on Plaintiff's car. The roadway on which the tree fell is maintained by DOT.

**{3}** As a result, Plaintiff filed a complaint (the Complaint) in the district court of Sandoval County against DOT and other public and private defendants seeking damages based on allegations that DOT negligently maintained the roadway and that

DOT's immunity under the New Mexico Tort Claims Act (TCA), specifically NMSA 1978, Section 41-4-11(A) (2019) (the Roadway Maintenance Exception), was waived. In response, DOT filed a motion to dismiss, pursuant to Rule 1-012(B)(6) (the Motion) seeking dismissal of the Complaint. Following hearing on the Motion, the district court granted the Motion and dismissed Plaintiff's Complaint as to the DOT. Plaintiff appeals from the order granting DOT's motion to dismiss.

**DISCUSSION**

**I.   Standard of Review**

{4}    Plaintiff's argument requires us to determine whether governmental immunity under the TCA bars Plaintiff's tort claim. "The standard of review for determining whether governmental immunity under the TCA bars a tort claim is a question of law which we review de novo." *Rutherford v. Chaves Cnty.*, 2003-NMSC-010, ¶ 8, 133 N.M. 756, 69 P.3d 1199.

{5}    As well, "the district court's decision to dismiss for failure to state a claim on which relief may be granted" is reviewed de novo. *Salas v. Guadalupe Credit Union*, ___-NMSC-___, ¶ 12, ___ P.3d ___ (S-1-SC-39641, Oct. 28, 2024). "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint, not the factual allegations of the pleadings which, for purposes of ruling on the motion, the court must accept as true." *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 2, 134 N.M. 43, 73 P.3d 181 (internal quotation marks and citation omitted).

## II. Tort Claims Act

{6}    Because Plaintiff's contention, that immunity under Section 41-4-11(A) of the TCA is waived under the circumstances present, would expand the Roadway Maintenance Exception and is an issue of first impression, we briefly review the history of the TCA. In *Hicks v. State*, the New Mexico Supreme Court abolished common law sovereign immunity. 1975-NMSC-056, ¶ 12, 88 N.M. 588, 544 P.2d 1153, *superseded by statute as stated in Sanders v. N.M. Corr. Dep't*, ___-NMSC-___, ¶ 12, ___ P.3d ___ (S-1-SC-39690, Oct. 10, 2024). In response, the Legislature enacted the TCA that reestablished the State's sovereign immunity from tort claims. NMSA 1978, § 41-4-4(A) (2001).

{7}    Recognizing, however, the need to balance "the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity" with the government's unlimited power to act for the public good, and thus "government should not have the duty to do everything that might be done," NMSA 1978, § 41-4-2(A) (1976), the Legislature created eight exceptions to the State's sovereign immunity. Section 41-4-4(A). These exceptions waive sovereign immunity "with respect to specific people and places which, in the performance of certain governmental functions, give rise to traditional duties to the public." *Sanders*, ___-NMSC-___, ¶ 15 (emphasis, internal quotation marks, and citation omitted).

{8}     Section 41-4-2(A) of the TCA provides in part: "[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the [TCA]." Furthermore, Section 41-4-4(A) states that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by [the TCA]." It is undisputed that DOT comes within the definition of "governmental entity." Thus, to prevail on a claim in tort against DOT, Plaintiff's cause of action must fit within one of the enumerated exceptions to the immunity granted by the Act.

**III.    Roadway Maintenance Exception**

{9}     Plaintiff argues that her claim falls within the Roadway Maintenance Exception of the TCA. Specifically, Plaintiff argues that "the [d]istrict [c]ourt erred as a matter of law in concluding that [DOT's] duty to maintain the ro[a]dways for the safety of the road fa[]ring public does not include the duty to remediate known dangerous conditions located on private property that abuts a roadway." Thus, to resolve this issue, we are called upon to interpret the TCA, specifically Section 41-4-11(A).

{10}    The Roadway Maintenance Exception provides:

> The immunity granted pursuant to . . . Section 41-4-4[(A)] . . . does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties during the construction,

4

> *and in subsequent maintenance*, of any bridge, culvert, highway, *roadway*, street, alley, sidewalk or parking area.

Section 41-4-11(A) (emphasis added).

**{11}** "In applying these waivers of immunity, we first determine the legislative intent in the enactment of the waiver and then interpret the language of the waiver according to its plain meaning." *Smith v. Vill. of Corrales*, 1985-NMCA-121, ¶ 5, 103 N.M. 734, 713 P.2d 4. "To determine the Legislature's intent, we begin by examining the language used by the Legislature as the primary indication of legislative intent." *Bd. of Cnty. Comm'rs of Cnty. of Rio Arriba v. Bd. of Cnty. Comm'rs of Cnty. of Santa Fe*, 2020-NMCA-017, ¶ 13, 460 P.3d 36. Additionally, in determining legislative intent, "we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. "We do not read into the statute language which is not there." *Smith*, 1985-NMCA-121, ¶ 5. While reviewing the plain language of Section 41-4-11(A), we bear in mind that "when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 9, 148 N.M. 426, 237 P.3d 728 (alteration, internal quotation marks, and citation omitted).

**{12}** In this case, our review of the plain language of Section 41-4-11(A) contains no language to indicate that DOT's duty includes remediating known dangerous

conditions located on private property that abuts but might imperil the maintenance of a roadway. However, such does not end our inquiry because our Supreme Court has previously concluded that "'maintenance' of a highway for purposes of Section 41-4-11(A) must be held to include more than physical care and upkeep of the roadway itself," *Miller v. N.M. Dep't of Transp.*, 1987-NMSC-081, ¶ 8, 106 N.M. 253, 741 P.2d 1374, *superseded by statute on other grounds as recognized by Martinez v. N.M. Dep't of Transp.*, 2013-NMSC-005, ¶ 14, 296 P.3d 468, leaving open the question of the degree to which surrounding care and upkeep are required.

{13} Consequently, we continue our interpretation of Section 41-4-11(A) by considering what the Legislature intended by "maintenance" of roadways. We, thus, look at what the word "maintenance" means. When interpreting the meaning of a word in a statute, "our courts often use dictionary definitions to ascertain the ordinary meaning of words that form the basis of statutory construction inquiries." *N.M. Educ. Ret. Bd. v. Romero*, 2024-NMCA-013, ¶ 16, 541 P.3d 175 (internal quotation marks and citation omitted). However, "we must look not only to a selective dictionary definition of words used in a statute, but also to the legislative intent underlying its enactment." *Miller*, 1987-NMSC-081, ¶ 7. The critical term under the Roadway Maintenance Exception is "maintenance." "When the [TCA] was originally passed in 1976, it did not define the term 'maintenance.'" *Martinez*, 2013-NMSC-005, ¶ 13. Subsequently, in 1991, the Legislature amended the TCA in

response to the Supreme Court's opinion in *Miller* to clarify that "'maintenance' does not include: (1) conduct involved in the issuance of a permit, driver's license or other official authorization to use the roads or highways of the state in a particular manner; or (2) an activity or event relating to a public building or public housing project that was not foreseeable." NMSA 1978, § 41-4-3(E) (2015); *Martinez*, 2013-NMSC-005, ¶ 14. Apart from the 1991 declaration that these two particular circumstances do not constitute "maintenance," the Legislature has not otherwise undertaken to define that which "maintenance" precisely is.

{14}     As a result, the term "maintenance" has, in major part, been defined judicially by way of case-by-case application. We therefore turn to examine the interpretation of the term "maintenance" by our appellate courts.

**A.     Interpretation of "Maintenance"**

{15}     We summarize the interpretation of the term "maintenance" to date as follows. Maintenance certainly means the upkeep and repair of the physical surface of the roadway. *See Cardoza v. Town of Silver City*, 1981-NMCA-061, ¶ 23, 96 N.M. 130, 628 P.2d 1126 ("'Maintenance' means 'upkeep and repair.'" (quoting *Clay v. City of Los Angeles*, 98 Cal. Rptr. 582, 585 (1972)); *Smith*, 1985-NMCA-121, ¶ 12 ("The term 'maintenance' in the context of [Section 41-4-11(A)] generally means the care or upkeep of something."). However, maintenance "involves more than simply keeping the road surface in good repair." *Fireman's Fund Ins. Co. v. Tucker*, 1980-

7

NMCA-082, ¶ 9, 95 N.M. 56, 618 P.2d 894; *Miller*, 1987-NMSC-081, ¶ 8 ("'[M]aintenance' of a highway for purposes of Section 41-4-11(A) . . . include[s] more than physical care and upkeep of the roadway itself."); *Rutherford*, 2003-NMSC-010, ¶¶ 21-22 (stating that "maintenance" is not confined to upkeep and repair).

{16} The duty to maintain roadways also embraces the "duty to conduct reasonable inspections of roadways," *Lujan v. N.M. Dep't of Transp.*, 2015-NMCA-005, ¶ 12, 341 P.3d 1, the duty to identify dangerous conditions on roadways, and the duty to remediate dangerous conditions on roadways. *Martinez*, 2013-NMSC-005, ¶¶ 20, 25.

{17} Specifically, our Courts have held that under Section 41-4-11(A) the government has the duty to inspect roadways to identify, and to remediate, the following dangerous conditions: (1) dangerous intersections without traffic controls, *see Grano v. Roadrunner Trucking, Inc.*, 1982-NMCA-080, ¶¶ 2, 5, 99 N.M. 227, 656 P.2d 890; (2) dangerous intersections with inadequate traffic controls, *Rickerson v. State of N.M.*, 1980-NMCA-050, ¶¶ 2, 10, 94 N.M. 473, 612 P.2d 703; (3) highways without properly posted traffic signs to regulate, warn or guide traffic, *Pollock v. State Highway & Transp. Dep't*, 1999-NMCA-083, ¶¶ 1, 7-8, 127 N.M. 521, 984 P.2d 768; (4) improperly maintained fences along public highways, *Fireman's Fund Ins. Co.*, 1980-NMCA-082, ¶ 13; (5) improperly fitted or

8

maintained manhole covers on streets, *Cardoza*, 1981-NMCA-061, ¶¶ 2, 30-31; (6) inadequate procedures for identifying a flooded roadway and the untimely control of traffic in response, *Rutherford*, 2003-NMSC-010, ¶¶ 1, 23-24; and (7) dangerous debris on the road, *Lujan*, 2015-NMCA-005, ¶ 12. We gather that all of these dangerous conditions have been located on or related to a given roadway.

{18} Arguably the broadest articulation of what is required by the term "maintenance" was set forth in one of our Supreme Court's most recent cases interpreting the Roadway Maintenance Exception. In *Martinez*, the Court stated that "the term maintenance requires a reasonable response to a known dangerous condition *on a roadway*." 2013-NMSC-005, ¶ 21 (emphasis added). Even under this construction, the duty to maintain roadways was confined to the identification and remediation of dangerous conditions *on the roadway*.

{19} Examples of activities that do not constitute maintenance of a roadway include: (1) "permitting dogs to roam loose on streets in violation of animal control ordinances"; (2) "issuing a driver's license without proof of insurance"; and (3) "failing to install wheelchair ramps on sidewalks." *Rutherford v. Chaves Cnty.*, 2002-NMCA-059, ¶ 18, 132 N.M. 289, 47 P.3d 448, *aff'd*, 2003-NMSC-010, 133 N.M. 756, 69 P.3d 1199.

{20} The duty to maintain roadways has never been interpreted to encompass the duty to inspect *private* property for dangerous conditions or the duty to identify and

remediate dangerous conditions present on *private* property. Nor, for reasons we will now explain, is such an interpretation supported by considerations of public policy.

**B.      Policy Considerations**

{21}      Before 2014, our Courts often framed the duty inquiry as arising from the government's responsibility to protect the public from foreseeable harm on New Mexico's roadways. *See, e.g.*, *Lerma ex rel. Lerma v. State Highway Dep't of N.M.*, 1994-NMSC-069, ¶ 8, 117 N.M. 782, 877 P.2d 1085 ("[T]he [government] has always had the common-law duty to exercise ordinary care to protect the general public from foreseeable harm on the highways of the state."); *Pollock*, 1999-NMCA-083, ¶ 11; *Rutherford*, 2003-NMSC-010, ¶¶ 12-13. Furthermore, where the government did not create the dangerous condition itself, we have frequently examined not only the foreseeability of the harm, but whether the government had actual or constructive notice of the condition at issue. *See, e.g.*, *Blackburn v. State of N.M.*, 1982-NMCA-073, ¶ 32, 98 N.M. 34, 644 P.2d 548 ("[W]here the [s]tate has not created the dangerous condition, no duty to remedy the dangerous condition arises until actual or constructive notice is present."); *Ryan v. N.M. State Highway & Transp. Dep't*, 1998-NMCA-116, ¶ 7, 125 N.M. 588, 964 P.2d 149 ("Whether [the d]efendant had a duty to warn drivers of wild-animal crossings on the . . . road . . . turns on whether [the d]efendant had actual or constructive notice that wild-animal crossings created a dangerous condition in that location."), *abrogated on*

*other grounds by Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, ¶¶ 1, 3, 326 P.3d 465; *Rutherford*, 2003-NMSC-010, ¶ 14 ("It is not enough for a plaintiff to simply prove that the hazard exists; the plaintiff must prove that the governmental entity had actual or constructive notice of the hazard when the governmental entity did not create the hazard.").

{22} However, in *Rodriguez*, our Supreme Court clarified that "foreseeability is not a factor for courts to consider when determining the existence of a duty, or when deciding to limit or eliminate an existing duty in a particular class of cases." 2014-NMSC-014, ¶ 1. In following the holding of *Rodriguez*, this Court, thereafter, in *Lujan* noted that "foreseeability can mask itself behind other terms," and held that we "do not consider 'actual or constructive notice' . . . as determinative of the [government's] duty." 2015-NMCA-005, ¶ 11. Instead, courts must "articulate specific policy reasons, unrelated to foreseeability considerations, if deciding that a defendant does not have a duty or that an existing duty should be limited." *Rodriguez*, 2014-NMSC-014, ¶ 1.

{23} "[G]overnment liability under an applicable waiver is not without limitation." *Sanders*, ___-NMSC-___, ¶ 17. "Determination of the standard of care . . . should be made with the knowledge that each governmental entity has financial limitations within which it must exercise authorized power and discretion in determining the extent and nature of its activities." Section 41-4-2(B).

11

**{24}** Moreover, in addition to DOT's financial limitations, we remain cognizant as well of the balance the Legislature sought to achieve when creating exceptions to the State's sovereign immunity. As we mentioned previously, when it enacted the TCA,

> [t]he [L]egislature recognize[d] the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity. On the other hand, the [L]egislature [also] recognize[d] that while a private party may readily be held liable for [their] torts within the chosen ambit of [their] activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.

Section 41-4-2(A). Of particular significance here is our Supreme Court's statement that,

> [t]he [L]egislature never intended government and private tortfeasors to receive identical treatment. The liabilities of the private tortfeasor in no way compare with the potential liabilities of [DOT] for the multitude of daily injuries and deaths on the [s]tate's [roadways]. The duty of care of a single motorist is not analogous to the all but impossible task of monitoring the countless conditions that determine the safety of the state [roadways].

*Marrujo v. N.M. State Highway Transp. Dep't*, 1994-NMSC-116, ¶ 24, 118 N.M. 753, 887 P.2d 747.

**{25}** Bearing in mind the financial and practical considerations involved, we conclude that public policy does not support an interpretation of the duty to maintain roadways that includes the duty to remediate dangerous conditions on private property that abuts a roadway. We explain.

12

{26} First, in order to identify and remediate dangerous conditions, DOT must conduct reasonable inspections of areas where those conditions originate. It follows logically that what is required to meet the obligation to identify and remediate dangerous conditions increases commensurate with the areas DOT must inspect. Recognizing that the resources at DOT's disposal are limited, and that DOT is already required to inspect and remediate dangerous conditions on all bridges, culverts, highways, roadways, streets, alleys, sidewalks and parking areas throughout the State, we think it no small addition to require DOT to identify and remediate dangerous conditions on private property abutting the roadway as well.

{27} Second, special consideration must be given to the unique challenges involved with requiring DOT to identify and remediate dangerous conditions *on private property*. How and whether DOT could go about inspecting—let alone remediating—dangerous conditions on private property consistent with the United States and New Mexico Constitutions is a matter outside the necessary scope of our analysis today. We think it sufficient to say that we are hesitant to impose a duty that might create absurd, unforeseen, unlimited, and unintended consequences, at least not without more evidence than we have before us of a legislative intent to do so. *See State v. Davis*, 2003-NMSC-022, ¶ 13, 134 N.M. 172, 74 P.3d 1064 ("No rule of construction necessitates our acceptance of an interpretation resulting in patently absurd consequences." (internal quotation marks and citation omitted)); *Hartman v.*

13

*Texaco Inc.*, 1997-NMCA-032, ¶ 17, 123 N.M. 220, 937 P.2d 979 ("We are hesitant to apply a . . . statute in a manner that might create unforeseen and unintended consequences . . . , at least not without more evidence than we have before us of a legislative intent to do so.").

{28}    Finally, although we are mindful that "we consistently have given a construction to the TCA that would effect its remedial intentions," *Sanders*, ___-NMSC-___, ¶ 21 (alterations, internal quotation marks, and citation omitted), we are careful not to impose on DOT the all-but-impossible duty of monitoring the countless areas where dangerous conditions that might enter the roadway could originate, and to require it to preemptively remediate those dangerous conditions before they can enter the roadway. To require this of a government entity would, in our view, run awry of the balance the Legislature sought to create when enacting the TCA. *See* § 41-4-2(A).

**C.    *Bober* Does Not Require a Different Result**

{29}    Plaintiff relies on *Bober v. New Mexico State Fair*, 1991-NMSC-031, 111 N.M. 644, 808 P.2d 614 in advancing her argument that DOT's duty to maintain roadways does not depend on whether a dangerous condition is located on a roadway or on private property abutting a roadway. Plaintiff's reliance on *Bober* is misplaced because *Bober* is distinguishable from and inapplicable to this case.

{30} In *Bober*, the plaintiff was injured in a car accident on a road near the State Fairgrounds when many of the more than ten-thousand patrons attending a concert at the State Fair drove out of the fairgrounds and onto a busy city street. *Id.* ¶ 2. The plaintiff sued the State Fair, alleging it was liable as a landowner for conducting an activity on its premises that created a dangerous condition in an adjoining area beyond the State Fairground's boundaries. *Id.* ¶¶ 3, 5, 11. In arguing that the state's immunity was waived, the plaintiff invoked inter alia the building waiver under NMSA 1978, Section 41-4-6(A) (1977) of the TCA. *Bober*, 1991-NMSC-031, ¶ 25. Our Supreme Court held that "a landowner's duty to avoid creating or permitting an unsafe condition or activity on the premises is [not] limited by the physical boundaries of the land." *Id.* ¶¶ 1, 12. In so holding, the Court stated:

> While Section 41-4-6 may appropriately be termed a "premises liability" statute, the liability envisioned by that section is not limited to claims caused by injuries occurring on or off a certain "premises," as the words "machinery" and "equipment" reveal. Moreover, liability is predicated not only on "maintenance" of a piece of publicly owned property, such as a building, park, or item of machinery or equipment, but it also arises from the "operation" of any such property.

*Id.* ¶ 27. Therefore, the Court "reject[ed] any narrower view of the applicability of [Section 41-4-6(A)]," holding instead that "Section 41-4-6[(A)] contemplates waiver of immunity where due to the alleged negligence of public employees *an injury arises from an unsafe, dangerous, or defective condition on property owned*

15

*and operated by the government.*" *Id.* (emphasis added) (alteration, omission, internal quotation marks, and citation omitted).

{31} Here, Plaintiff invokes the Roadway Maintenance Exception, not the building waiver. We have never held that the Roadway Maintenance Exception is a premises liability statute. Moreover, the Roadway Maintenance Exception does not contain the words "operation," "machinery," or "equipment." *Compare* § 41-4-6(A), *with* § 41-4-11(A). We are therefore not persuaded that the duties imposed by the building waiver and the Roadway Maintenance Exception are analogous. *See Rutherford*, 2003-NMSC-010, ¶ 17 ("[R]oads are not operated in the way motor vehicles, hospitals, prisons, and public swimming pools are operated.").

{32} We hold that the duty to maintain roadways does not include the duty to remediate dangerous conditions on private property that abuts a roadway. Accordingly, because the tree was located on private property, we conclude that (1) DOT did not have a duty to remediate the tree; (2) DOT's immunity was not waived under Section 41-4-11(A); and (3) the district court properly dismissed Plaintiff's Complaint against DOT.

**CONCLUSION**

{33} We affirm the district court.

{34}    **IT IS SO ORDERED.**

_____
**GERALD E. BACA, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**KRISTINA BOGARDUS, Judge**